**WESTINGHOUSE HANFORD COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–756C.**

United States Court of Federal Claims.

Sept. 14, 2000.

---

Shlomo D. Katz, with whom on the brief was Kenneth B. Weckstein, Epstein, Becker & Green, P.C., Washington, D.C., for plaintiff.

James W. Poirier, Commercial Litigation Branch, Civil Division, Department of Justice, with whom on the brief was Joseph Schroeder, Department of Energy, Washington, D.C., for defendant.

## OPINION

MARGOLIS, Senior Judge.

This contract action is before the Court on cross-motions for summary judgment. After careful consideration of both the written and oral arguments of both parties, the Court concludes that the contracting officer acted in accordance with the terms of the contract in reviewing actual costs and adjusting the fees awarded to Westinghouse. Therefore, plaintiff's motion is denied. Defendant's cross-motion is granted.

## FACTS

Contract DE–AC06–87RL10930 (the contract) was awarded to Westinghouse Hanford Company (Westinghouse) in 1987 by the United States acting through the Department of Energy (DOE), Richland Operations Office (RL). Under the contract, Westinghouse became the management and operating contractor at the Hanford Site in Washington State.

The contract provided that DOE would pay Westinghouse an incentive fee, under certain circumstances. The fee was to be based on cost savings achieved as a result of efforts by Westinghouse that went beyond the normal procedures and routine business practices expected under the contract.

In 1994, when this dispute arose, the incentive program was called Employing Consolidated and Cost Effective Leadership (ECCEL). Two contract clauses, H–17 and I–57, governed the ECCEL program. Under the ECCEL program, Westinghouse would submit a Cost Reduction Proposal (CRP) to the contracting officer to be forwarded to a DOE review board. The review board was comprised of representatives of RL's budget, finance, program and contracting offices. Using the recommendation of the board as one factor, the final decision regarding acceptance of a CRP was made by the contracting officer. After a CRP was accepted, the contract provided for further reviews by DOE. Westinghouse does not dispute that the contract permitted DOE to review the actual costs of accepted CRPs and to adjust the amount of fee earned if the actual net savings were significantly more or less than the estimated net savings. However, this dispute concerns the interpretation and application of those contractual rights of review.

## I. THE CONTRACT

Before Fiscal 1994, the contract contained Clause I–57, entitled "COST EFFECTIVENESS INCENTIVE CLAUSE." It provided:

(a) *General.*

The Department of Energy is strongly committed to the effective and efficient management of its Management and Operating (M & O) contracts. Accordingly, the Contractor is encouraged to prepare and submit Cost Reduction Proposals (CRPs) to the Contracting Officer for approval or rejection. A CRP is a proposal from the Contractor which, if approved, will reduce the cost of managing and operating DOE programs and facilities through efficient, cost effective, safe, and environmentally sound practices. The Contractor may be paid a fee as set forth in paragraph H.10 for accepted CRPs.

(b) *Procedure for submission of CRPs.*

Each CRP submitted by the Contractor shall include, as a minimum, the following information:

(1) A description of the existing requirement to include baseline costs, methods, procedures, or processes and a description of the proposed require-

ment, to include cost improvement methods, procedures, or processes, the comparative advantages and disadvantages of each, and the effect of the proposed change.

(2) A list of the requirements that must be changed if the CRP is accepted, including changes or waivers to design requirements, maintenance requirements, regulatory requirements or DOE policy documents, etc.

(3) A separate, detailed cost estimate for the normal requirements, methods, procedures, or processes and the proposed CRP requirement. The estimate for the proposed CRP requirement shall list separately the costs of preparing and implementing the CRP.

(4) A description and estimate of the costs the DOE or the Contractor may incur in implementing the CRP, such as test and evaluation and support costs.

(5) A statement of the time by which acceptance of the CRP must be issued in order to achieve the maximum cost reduction, including any effect on schedules.

(c) *Supporting Cost Data for CRP's.* [sic] The Contractor shall submit supporting cost data with each CRP, together with a statement to the effect that such cost data is accurate, complete, and current as of the date of final agreement on incentive fee. In the event that such cost data is not accurate, complete, and current as of the date that the Contractor and the DOE finally agree upon the amount of incentive fee, the DOE reserves the right to adjust the amount of such fee previously awarded to the Contractor. The Contracting Officer's decision on the adjusted amount of incentive fee to be awarded under the CRP is not subject to the Disputes Clause or otherwise subject to litigation under the Contract Disputes Act of 1978 (41 U.S.C. §§ 601–613).[1]

(d) *Calculation of Estimated Net Savings.* Net savings shall be calculated by subtracting the actual total costs of the proposed approach (including all necessary preparation, submission, and implementation costs to the Contractor and DOE) from the actual costs of the existing requirement. Collateral savings and savings on future contracts shall not be permitted.

(e) *Acceptance of CRPs and Award of Fee.*

The DOE will unilaterally indicate acceptance or rejection by letter from the Contracting Officer, citing this clause within the acceptance period stated in the CRP. The letter of acceptance will include the amount of estimated net savings and the Contractor's estimated fee to be paid under the CRP as calculated by the Contracting Officer in accordance with paragraph H.10. The letter of acceptance will set forth the procedures and the time schedules for payment of the CRP award, if any. Until an acceptance is issued, the Contractor shall perform in accordance with existing requirements. The Contracting Officer's decision to accept or reject the CRP, as submitted, is not subject to the Disputes Clause or otherwise subject to litigation under the Contract Disputes Act of 1978 (41 U.S.C. § 601–613). No subcontracts shall be awarded for the preparation of CRPs without the written approval of the Contracting Officer.

(f) *Rejection or withdrawal of a CRP.*

If the DOE rejects a CRP, the Contracting Officer shall notify the Contractor in writing, explaining the reasons for rejection. The Contractor may withdraw any CRP, in whole or in part, at any time before it is accepted or rejected by the DOE.

(g) *Validation of actual savings.*

The DOE shall have the right to review the actual costs of an accepted CRP, and to determine the extent of actual net savings. If the actual net savings are significantly more or less than the estimated net savings, the amount of the fee awarded under the CRP will be adjusted in accordance with the terms of the

---

1. The portion of the clause that purports to take this dispute out of the Contract Disputes Act is void. *See Burnside–Ott Aviation Training Center v. Dalton,* 107 F.3d 854 (Fed.Cir.1997).

CRP. The Contracting Officer's decision on the adjusted amount of the fee awarded under the CRP is not subject to the Disputes Clause or otherwise subject to litigation under the Contract Disputes Act of 1978 (41 U.S.C. §§ 601–613).

For Fiscal Year 1994, Clause I–57 above was amended so that each cross-reference to "paragraph H.10" would refer to "paragraph H.17." In all other respects, Clause I–57 remained unchanged at all relevant times. Plaintiff's Appendix at p. 9. Clause H.17 of the contract, entitled "EMPLOYING CONSOLIDATED AND COST EFFECTIVE LEADERSHIP (ECCEL)," stated in pertinent part:

(b) *Other ECCEL cost-saving practices that are above and beyond normal business practice.*

(1) *Criteria above and beyond normal business practice.* Savings that are the result of the Contractor's ... initiatives, and which are derived from an enhanced device, contrivance, process, approach, or improvement that has been applied to the particular project or program with [sic] which the ECCEL proposal applies and that demonstrates a deviation from a business as usual approach by striving for cost effectiveness above and beyond routine business practices.

(2) *Applicable guidelines.* Savings that are consistent with (b)(1), above, criteria and meet one or more of the following definitions shall be credited to the ECCEL cost savings goal.

(i) Savings which are removed or deducted from an established baseline and placed in an ECCEL management reserve account for retention in that account, or are identified for alternate uses as approved by DOE.

(ii) Savings from a capital, or expense-funded construction, budget which reduces the total estimated cost and is placed into a project reserve or contingency account for retention in that account or is identified for alternate uses as approved by DOE.

(iii) Savings from a liquidation pool or overhead account ...

(c) *Fee.*

Earned fee is 12 percent of the first $100 million saved ...

Plaintiff's Appendix at pp. 7–8.

## II.  COST REDUCTION PROPOSALS

There are three CRPs at issue in this case:

1. CRP No. 94–0568, the L–102 Highway Project, was submitted to DOE on April 21, 1994. Plaintiff's Appendix at pp. 23–26. Under "ANTICIPATED BUDGET IMPACT," the CRP stated: "The design and construction cost for Project L–102 has been reduced by $7,970,000." Plaintiff's Appendix at p. 26.

After an initial disapproval and appeal, the contracting officer accepted the L–102 CRP on May 9, 1994. Plaintiff's Appendix at pp. 256–57. On May 9, 1994, contracting officer, Robert Larson, sent Westinghouse a letter that had been reviewed and approved by the DOE contracting officer, Theodore Turpin. The letter contained a "Rationale for Approval" statement. Plaintiff's Appendix at pp. 259, 261–63.

Congress did not fund the L–102 Highway Project during Fiscal Year 1995, and therefore DOE canceled the L–102 Project. Plaintiff's Appendix at p. 260. On May 26, 1994, DOE's general support services contractor, MACTEC, issued a report stating that the L–102 CRP did not qualify for ECCEL credit because the baseline was not validated. Plaintiff's Appendix at pp. 29–31, 128–29.

2. CRP No. 94–0927, Tank Heat Removal, was submitted to DOE on April 14, 1994. Plaintiff's Appendix at pp. 32–36. Under "ANTICIPATED BUDGET IMPACT," the CRP stated in part: "The approval [of] funds of $10,593,586 have been reallocated into other areas of the project." Plaintiff's Appendix at p. 34. This CRP made possible an expansion of the scope of work from four to six tanks. Plaintiff's Appendix at pp. 194–95, 210–11.

The Tank Heat Removal CRP amount was identified for an alternative use on May 5, 1994, when Secretary of Energy, Hazel O'Leary, signed the baseline change proposal allowing six tanks to be designed and built for the cost of four. Plaintiff's Appendix at

pp. 198–200, 210, 212. The contracting officer accepted the CRP on June 20, 1994. Plaintiff's Appendix at pp. 252–53. The letter approving the CRP was signed by Larson. Plaintiff's Appendix at pp. 250, 37–38.

The decision to cancel the project was made by DOE. Plaintiff's Appendix at pp. 135, 260. On August 23, 1994, DOE's general support services contractor, MACTEC, issued a report stating that the Tank Heat Removal CRP was overstated because it was "not based on an approved, funded baseline." Plaintiff's Appendix at pp. 40,130.

3. CRP No. 94–0984, Deletion of Drain Collection Pits, was submitted to DOE on July 18, 1994. Plaintiff's Appendix at p. 47. Under "ANTICIPATED BUDGET IMPACT," the CRP stated in part: "The approval funds [of] $3,621,398 have been relocated into other areas of the project." Plaintiff's Appendix at p. 47.

The contracting officer accepted the Collection Pits CRP on September 20, 1994. Plaintiff's Appendix at pp. 254–55. On September 20, 1994, contracting officer P.E. Rasmussen, Larson's successor, sent Westinghouse a letter that approved the CRP. Plaintiff's Appendix at pp. 55–57, 136.

On December 14, 1994, DOE's general support contractor, MACTEC, issued a report stating that it was unable to verify the savings claimed in the Collection Pits CRP. Plaintiff's Appendix at pp. 60, 137.

## III. DISPUTED CONDUCT

DOE ordered Westinghouse to return the ECCEL fees attributable to the three CRPs on several occasions before May 30, 1996, and due to non-compliance, set off those fees against other payments owed to Westinghouse. By letter dated May 28, 1997, Westinghouse submitted a certified claim seeking $2,064,882.57 compensation in connection therewith. Plaintiff's Appendix at pp. 61–79, 143. The contracting officer issued a final decision letter August 21, 1997, denying Westinghouse's claim because the CRPs did not result in actual savings and did not meet the requirements of Clause H–17(a), (b)(1), and (b)(2)(ii). The letter cited Clause I–57 as

authorization for the fee adjustments. Plaintiff's Appendix at pp. 61–66, 64–65.

## IV. PLAINTIFF'S DAMAGES CALCULATION

The CRPs were approved for $7,970,000 (L–102), $10,593,586 (Tank Heat Removal), and $3,621,398 (Collection Pits). Twelve percent of each is $956,400; $1,271,230.32; and $434,566.80, respectively, for a total of $2,662,197.12. After various credits and offsets between the parties the amount Westinghouse seeks is $2,064,882.57.

### DISCUSSION

The parties agree that there are no material facts in dispute and that it is for the Court to rule on contract interpretation as a matter of law. *National Rural Utils. Cooperative Finance Corp. v. United States*, 14 Cl.Ct. 130, 136 (1988), *aff'd*, 867 F.2d 1393 (Fed.Cir. 1989). Questions of contract interpretation as issues of law may be disposed of on summary judgment. *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir.1984).

It is undisputed that the projects concerned in the three CRPs were canceled and that the work therefore was not performed by Westinghouse. It is also undisputed that the contracting officer had the right under the contract to "review the actual costs of accepted CRPs and to adjust the amount of fee earned by Westinghouse if the actual net savings were significantly more or less than the estimated net savings." P's Proposed Findings, p. 7, # 11.

It is, however, plaintiff's position that there are two reasons that the fees were earned and should be awarded to plaintiff by this Court:

First, plaintiff asserts that all conditions precedent to recognition of actual savings were fulfilled in association with the CRPs. Under Clause H–17, the CRPs had to reduce the total estimated cost (TEC) and the savings had to be placed into a project reserve account or be identified for alternate uses approved by DOE. According to plaintiff, each of the CRPs at issue met these requirements.

The Court finds that after these conditions were met, DOE still had a right to review the CRP "to determine the extent of actual net savings" achieved with respect to the project. Clause I–57(g).

Second, plaintiff asserts that the type of review conducted by DOE was beyond the scope of the applicable contract clause. Plaintiff asserts that there is nothing to review when "actual savings" are synonymous with "estimated savings" and that in this situation they are the same. Plaintiff's basis for this assertion is that the projects at issue here had TECs that also constituted ceiling costs. Thus the accepted and approved CRPs, by providing a new and lower ceiling price, constituted an "actual savings." Plaintiff asserts that Clause I–57(g), as construed by defendant, would be appropriate only where process or operations related work is at issue because in those situations a new method of performance can be compared with an old method of performance in ongoing tasks. However, according to plaintiff, where there is a one time construction project, such as these CRPs relate to, there is nothing to compare. The new CRP amount is an actual savings over the original allotted ceiling price. Plaintiff argues that it was not intended that DOE would review the CRPs after performance, but would merely audit the calculation of the estimated net savings for accuracy. Further, plaintiff argues that DOE's interpretation of Clause I–57(g) would result in a forfeiture in this case. Westinghouse fulfilled all of the obligations under the ECCEL clause and should not bear the risk of forfeiture when the projects were canceled due to developments that were not within plaintiff's control.

■ The parties agree that the plain language of the contract, read as a whole, must be enforced, and that "[w]e must interpret the contract in a manner that gives meaning to all its provisions and makes sense." *McAbee Construction, Inc. v. United States*, 97 F.3d 1431, 1435 (Fed.Cir.1996). Both parties have presented arguments in favor of their interpretation of the "plain language" they contend supports their position.

■ The Court finds that certain words and the general sense of the contract point to an interpretation of the contract that would allow DOE to adjust the amount of the fees awarded as it did.

The contract words that the Court finds determinative are in the title and the first sentence of Clause I–57(g). In the title, the word *validation* is used. To validate is to corroborate. Webster's New Collegiate Dictionary 1282 (1996). Under plaintiff's construction there would be nothing to corroborate. The first sentence of the section says, "The DOE shall have the right to review the actual costs of an accepted CRP, and to determine the extent of actual net savings." Clause I–57(g). This sentence says actual *costs*. Costs refers to an outlay or expenditure incurred. Webster's New Collegiate Dictionary 255 (1979). Plaintiff asserts that estimated savings and actual savings are synonymous where construction project CRPs like these are concerned. But the use of the word *costs* clearly refers to a situation where there was some expenditure, expense, or disbursement by DOE that is to be compared with the CRP to determine actual *net* savings. Neither the word *costs* nor the word *net* would be afforded its plain meaning if plaintiff's interpretation was adopted. If the project is canceled, there is no actual cost. If there is no cost or expenditure, the net savings would necessarily be significantly less than the CRP amount. Indeed, there would be no *net* savings at all as a result of the CRP. Thus, the contracting office was bound, by the terms of the contract, to adjust the fee accordingly. This sentence also makes it clear that DOE has the right to review the actual costs and make the adjustment even though the CRP had already been accepted.

The Court finds that Clause I–57(g) allows for a review of all CRPs after performance of the project they relate to and for a fee adjustment in accordance with net savings actually obtained. If the project is not performed, there can be no net savings, and the fee must be adjusted to zero. The Court finds that the contract does not state that it limits this right of review to CRPs relating to process or operations work, nor does it exclude application to construction projects.

The contract must be enforced as it was written.

Citing various memos, plaintiff claims it was never the government's intention to wait until the work on the project was done to review the CRPs. Oral argument Tr. at 13. Although it is true that there were times that reviews occurred within 30 days after a CRP was accepted, as mentioned in the memos, that was not always the case. The course of dealing between the parties over many years included Westinghouse's cooperation in CRP reviews more than 30 days after a CRP was accepted. Tr. at 41. The course of dealing is persuasive, but in addition, the Court finds it determinative that the contract does not limit the right of review to any stated time period.

Plaintiff regards the audit as being just an opportunity to check the CRP for accuracy. Plaintiff asserts DOE went beyond the review intended by I–57(g).

The Court disagrees. The Court finds that there are two subsections granting a right of CRP review, and that the language used contemplates two different kinds of review which will take place at two different times. There is the right of review afforded under Clause I–57(g) already discussed. There is also the right of review for accuracy afforded by I–57(c) which states:

> In the event that such cost data is not accurate, complete, and current as of the date that the Contractor and the DOE finally agree upon the amount of incentive fee, the DOE reserves the right to adjust the amount of such fee previously awarded to the Contractor.

As far as plaintiff's forfeiture argument is concerned, the Clause I–57(g) right of review clearly shifted the risk to Westinghouse that the project might be canceled resulting in a total and thus substantial reduction in cost for the project. Plaintiff was paid for the out-of-pocket costs incurred in preparing the CRPs, so plaintiff was paid for what was actually done with respect to the CRPs. Tr. at 36.

There is additional support for the Court's interpretation of the contract to be found in the depositions of senior Westinghouse manager, John Knoll, and Robert Doggett, the manager responsible for day-to-day supervision of the incentive fee program. Both clearly thought the review of costs would occur after the work on the project was completed. Knoll stated during his deposition:

> In my experience, reviewing actual costs means that you wait until all of the costs have been incurred and then you review the costs.

Defendant's Appendix at p. 210.

> My understanding is that at an early point in the CRP process, costs may represent proposed costs, or savings may represent proposed savings. At some point in the future when costs have been incurred, those costs may be actual or those savings may be actual.

Defendant's Appendix at p. 211.

Doggett stated during his deposition:

> The actual costs are those, I presume, measured after the initiative has been fully implemented and the actual cost data is available.

Defendant's Appendix at p. 190.

The Court finds that the plain language of the contract, considered in its entirety, would allow the CRP fees to be adjusted to zero when, as here, the projects were not implemented.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. The Clerk is directed to dismiss plaintiff's complaint with prejudice. Costs for the defendant.