# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| Ikhana, LLC ) | ASBCA Nos. 60462, 60463, 60464 |
| ) | 60465, 60466, 61102 |
| ) | |
| Under Contract No. W912DR-13-C-0051 ) | |

APPEARANCE FOR THE APPELLANT: William A. Scott, Esq.
    Pedersen & Scott, P.C.
    Charleston, SC

APPEARANCES FOR THE GOVERNMENT: Thomas H. Gourlay, Jr., Esq.
    Engineer Chief Trial Attorney
    Michael T. Shields, Esq.
    David B. Jerger, Esq.
    Engineer Trial Attorneys
    U.S. Army Engineer District, Baltimore

## OPINION BY ADMINISTRATIVE JUDGE SWEET ON THE GOVERNMENT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND SURETY'S MOTION TO INTERVENE AND TO WITHDRAW THE APPEALS, OR FOR SUMMARY JUDGMENT

Appellant Ikhana, LLC brings these actions seeking (1) to convert a termination for default to a termination for convenience (ASBCA No. 61102); and (2) damages for breach of contract (ASBCA Nos. 60462-60466). The government has moved to dismiss, or in the alternative for summary judgment, arguing that Ikhana lacks standing because a surety—The Guarantee Company of North America, USA (the surety)—is the real party in interest. The surety also has moved to intervene. Further, the surety has moved to withdraw the appeals, or in the alternative for summary judgment. The surety raises the same basic argument as the government. The motions are denied.

## STATEMENT OF FACT (SOF) FOR PURPOSES OF THE MOTIONS

1. The government awarded Contract No. W912DR-13-C-0051 (0051 contract) to Ikhana to construct secured access lanes and remote screening facilities at the Pentagon (R4, tab 2).

2. In connection with the 0051 contract, Ikhana executed performance and payment bonds with the surety (R4, tab 14).

3. Part of the consideration Ikhana offered for the bonds was to execute an indemnity agreement with the surety (gov't mot., ex. B). Under the indemnity agreement, an "EVENT OF DEFAULT" occurred when, *inter alia*, (1) Ikhana was declared to be in default; (2) Ikhana breached any terms of the indemnity agreement; or (3) there was "a payment by SURETY on any BOND" (*id.* ¶ 13). Ikhana agreed that, in the event of such a default, it would assign to the surety a possessory right to collateral—which included "contract rights" (*id.* ¶¶ 10(a)(i), 12). Moreover, upon an event of default, the surety may:

> [A]ssert and prosecute any right or claim hereby assigned, transferred or otherwise conveyed in the name of [Ikhana] and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances in its sole and absolute discretion, subject only to the requirement that it act in good faith, which shall be defined as the absence of deliberate or willful malfeasance.

(Gov't mot., ex. B, ¶ 14(c)) The indemnity agreement also stated that Ikhana:

> [H]ereby irrevocably constitute and appoint SURETY as their true and lawful attorney with the right, but not the obligation, to exercise all of the rights of [Ikhana] assigned, transferred and conveyed to SURETY in this Agreement, hereby giving and granting to SURETY full power and authority to make, execute, endorse and deliver any agreements for the full protection intended to be given to SURETY hereunder as [Ikhana] might or could do.

(*Id.* ¶ 18)

4. After performance began, Ikhana encountered problems. In October 2015, Ikhana filed four claims (affirmative claims) with the contracting officer (CO). In the affirmative claims, Ikhana asserted that defective plans and specifications, unforeseen conditions, and government-caused delays caused increased costs and delays. (R4, tabs 129, 135, 137-38) The CO did not issue a final decision on the affirmative claims.

5. On 17 December 2015, the government terminated the contract for default (R4, tab 142).

6. On 25 February, 2016, Ikhana appealed the termination for default, as well as the deemed denial of its affirmative claims (collectively, appeals).

2

7. Thereafter, the government made a claim with the surety against the performance bond (gov't mot., ex. A, ¶ 7).

8. Between November 2015 and June 2016, seven of Ikhana's subcontractors asserted claims against the payment bond (gov't mot., ex. A, ¶ 8). In 2016, the surety paid three subcontractors under the payment bonds (*id.* ¶ 9). Two other subcontractors sued the surety (*id.* ¶¶ 8, 10).

9. On 15 June 2016, the surety made a demand for collateral from Ikhana under the indemnity agreement (gov't mot., ex. E). Ikhana responded to the demand letter by stating that it was premature and the amount sought was unreasonable (app. resp., ex. 9 at 1).

10. The surety and the government then began negotiating a settlement of the government's bond claim (app. resp., ex. 12). The government proposed that the settlement include a clause pursuant to which the surety agreed to cause Ikhana to dismiss these appeals and release the government from all claims (*id.* at 4).

11. Jeffrey Jubera, the surety's vice president for claims, responded that "[t]his was not the proposal that you and I discussed in Baltimore. I cannot take the steps to waive Ikhana's rights to their claim if the $1.7 [million] is not going to be applied to the existing contract work." (App. resp., ex. 13 at 2)

12. On 25 September 2016, a government attorney sent an email to Ikhana's Patrick Pike, stating that:

> [T]here may have been a miscommunication regarding your positon after our initial offer of $950,000 from the Government in exchange for a full settlement. [The CO] received the attached email from Jeff Jubera indicating that he could not agree to work to waive Ikhana's rights if the entire $1.7M of Government funds would not be applied to the completion contract. Afterwards, you and I discussed on the phone that in the interest of mitigating damages, you and Jeff had discussed proceeding with the Government paying $950,000, but with the parties reserving their rights. I then sent over another draft of the settlement agreement, with all three parties reserving rights. You have since responded that [the surety] would be willing to pay $1.2M toward the completion contract in exchange for full settlement, meaning the Government would pay approximately $1.5M toward the completion contract. I left a voicemail for you responding that we weren't able to accept that offer.

> I may have misunderstood your position regarding
> reservation of rights. If you were just reiterating Jeff's
> email, which appeared to be that if the Government paid
> $950,000, the settlement could not include settlement with
> Ikhana, but would still include settlement with [the surety],
> that is something we are willing to consider, and would
> like to speak with you about on Monday.

(App. resp., ex. 14 at 2)

13. Negotiations continued, and on 30 September, 2016, the government and the surety executed a settlement agreement (gov't mot., ex. F). Under the settlement agreement, there was no take-over agreement. Rather, the surety tendered a completion contractor (*id.* ¶ 1). The surety agreed to pay the completion contractor $1,455,000, and the government would pay the remainder of the completion contract (*id.* ¶ 3). Further, the surety agreed that it would cause the dismissal of these appeals and release the government from any claims regarding the contract (*id.* ¶ 4). In exchange, the government agreed to release the surety from all liability under the performance and payment bonds, including liquidated damages and additional excess reprocurement costs (*id.* ¶ 6).

## DECISION

The fundamental issues underlying the pending motions to dismiss, to intervene and withdraw, and for summary judgment are whether Ikhana assigned the claims subject to these appeals to the surety, and if so, whether that assignment precludes Ikhana from bringing these appeals (gov't mot. at 11; surety mot. to intervene, ¶¶ 10-11; surety mot. to withdraw at 11, 13). We need not decide the first issue. Even assuming, without deciding, that there was an assignment,[1] that assignment would not preclude Ikhana from bringing these appeals.

Congress enacted the Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (CDA), to equalize the parties' bargaining power by guaranteeing at least one impartial review of CO decisions. *Minesen Co. v. McHugh*, 671 F.3d 1332, 1340-41 (Fed. Cir. 2012); *Burnside-Ott Aviation Training Ctr. v. Dalton*, 107 F.3d 854, 859 (Fed. Cir. 1997). "Permitting parties to contract away Board review entirely would subvert this purpose." *Burnside-Ott*, 107 F.3d at 859. Thus:

> [A]ny attempt to deprive the Board of power to hear a
> contract dispute that otherwise falls under the CDA

---

[1] For purposes of this opinion, we also assume, without deciding, that the Anti-Assignment Act, 31 U.S.C. § 3727, 41 U.S.C. § 6305 does not prohibit any assignment.

4

> conflicts with the normal *de novo* review mandated by the
> CDA and subverts the purpose of the CDA.... Congress
> commanded that the CO's decision on any matter cannot
> be denied Board review.

*Id.* at 858 (holding that a contractor cannot waive its right to appeal a CO's decision to the Board).[2]

Here, the indemnity and settlement agreements impermissibly attempt to deprive us of our power to hear these appeals, which otherwise fall under the CDA. Admittedly, that attempted deprivation is less direct than was the attempted deprivation in *Burnside-Ott*. In *Burnside-Ott*, the contractor directly waived its right to appeal to the Board in its contract with the government. 107 F.3d at 856. In this case, Ikhana indirectly waived its right to appeal to the Board by assigning the claims subject to these appeals to the surety, which then agreed with the government to withdraw these appeals. (SOF ¶¶ 3, 13) However, that is a distinction without a difference. Regardless of the particular manner in which the contractor waived its CDA right to Board review, the end result is the same—the contractor impermissibly has contracted away its unwaivable CDA right to impartial review of the CO's decisions. *Burnside-Ott*, 107 F.3d at 859.

The government argues that the surety had to be able to settle Ikhana's claims because otherwise it had no incentive to devote any resources to project completion prior to resolution of the appeals, which would defeat the purpose of a bond. However, the government provides no authority in support of that argument. (Gov't mot. at 11) On the contrary, that argument is belied by the facts of this case. During their settlement negotiations, both the surety and the government expressed their willingness to fund project completion without settling Ikhana's claims (SOF ¶¶ 11, 12). In any event, the government's equitable argument cannot override Ikhana's unwaivable CDA right to Board review of the CO's decision and deemed denials.

Also misplaced is the surety's reliance upon *Safeco Insurance Company of America*, ASBCA No. 52107, 03-2 BCA ¶ 32,341 (surety mot. to withdraw at 14). Unlike in the present case, it was the government—not the contractor—that was seeking to nullify the assignment of the contractor's claim to the surety in *Safeco*. 03-2 BCA ¶ 32,341 at 160,013-14. That distinction makes a difference because it

---

[2] *Minesen* declined to extend *Burnside-Ott* to cases where the parties waive their rights to appeal from the Board to the United States Court of Appeals for the Federal Circuit. 671 F.3d at 1340-41. *Burnside-Ott*—instead of *Minesen*—applies to this appeal because the issue here is a contractor's access to the Board, not its right to appeal Board decisions to the Federal Circuit.

5

means that, unlike in the present case, there was no assertion by the contractor that it had been compelled to waive its CDA right to Board review in *Safeco. Id.*[3]

In sum, any assignment of the claims Ikhana appeals was invalid under *Burnside-Ott*. As a result, Ikhana has standing to bring these appeals, the surety does not have standing, and the surety therefore cannot withdraw the appeals.

## CONCLUSION

The government's motion to dismiss, or in the alternative for summary judgment is denied. The surety's motion to intervene is denied. The surety's motion to withdraw the appeals or, in the alternative, motion for summary judgment is denied.

Dated: 18 October 2017

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[3] *Maharaj Construction Inc.*, LBCA 2001-BCA-3, 2005 WL 166315—which the government and the surety cite (gov't mot. at 13-14; surety mot. to withdraw at 14)—is not binding upon us. Nor do we find it persuasive because it does not address *Burnside-Ott*, which is binding precedent.

6

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60462, 60463, 60464, 60465, 60466, 61102, Appeals of Ikhana LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals