CLEVENGER, Circuit Judge.
 

 Burnside-Ott Aviation Training Center (Burnside-Ott) appeals from the decision of the Armed Services Board of Contract Appeals (Board),
 
 Burnside-Ott Aviation Training Center,
 
 ASBCA No. 43184, 96-1 BCA ¶ 28,102, 1995 WL 757005 (Dec. 14, 1995). The Board denied Burnside-Ott’s claim seeking recovery of contract award fees that Burnside-Ott alleges were improperly with
 
 *-728
 
 held by the Navy. Because the Board’s decision lacks reversible error, we affirm.
 

 I
 

 The present dispute originated from a request for proposals (RFP) issued by the Navy on December 31, 1987, for a cost-plus-award-fee (CPAF) contract covering aircraft maintenance, repair, and overhaul at six naval air stations. A contractor is .compensated under a CPAF contract for all of the contractor’s allowable costs plus a “base fee” which is a percentage of the total estimated contract cost. The contractor is also eligible for an “award fee” that is tied to performance ratings received by the contractor during the course of fulfilling the contract and is based on a percentage of the total estimated contract cost. Bumside-Ott was the recipient of the contract and received good performance ratings. Burnside-Ott’s claim here centers on the government’s calculation
 
 of the award
 
 fee pursuant to a conversion chart that was not included in the RFP or the contract.
 

 Bumside-Ott’s award fee was governed by clauses H-20 and H-21 of the RFP. Clause H-20 provided that the maximum base fee allowable for the contract was three percent of total estimated costs, and that the total available fee (base fee plus award fee) was not to exceed ten percent of total estimated costs. These amounts were later amended to a zero base fee with a ten percent total available fee. Clause H-20 also noted that the award fee was to be awarded on a quarterly basis, “based on a unilateral determination by the Government,” and calculated as set forth by evaluation criteria in Clause H-21. Clause H-21 listed “Performance Evaluation Report Criteria” with corresponding numerical ratings as follows:
 

 0-60 Submarginal
 

 61-70 Marginal
 

 71-80 Average
 

 81-90 Above Average
 

 91-100 Excellent
 

 The clause defined “Submarginal” performance as performance that “does not meet the contract minimum requirements and may result in termination.” Clause H-21 also stated that the amount of the award fee was to be determined by the Fee Determining Official (FDO), and noted, in accordance with Federal Acquisition Regulation (FAR) 16.40A-2(a): “The Award Fee decision is a unilateral determination made by the FDO and is not subject to the ‘DISPUTES’ Clause of the contract.”
 

 The precise language of FAR 16.404-2(a) is:
 

 The amount of the award fee to be paid is determined by the Government’s judgmental evaluation of the contractor’s performance in terms of the criteria stated in the contract. This determination is made unilaterally by the Government and is not subject to the Disputes clause.
 

 Under FAR 16.405, “Contract Clauses,” CPAF contracts must contain a clause that “[ejxpressly excludes from the operation of the Disputes clause any disagreement by the contractor concerning the amount of the award fee.”
 

 The resulting contract between Bumside-Ott and the Navy was known as the Aircraft Intermediate Maintenance Department (AIMD) contract, and contained the required portions of Clauses H-20 and H-21. Neither the RFP nor the AIMD contract, however, contained any method or chart for converting performance ratings to award fees
 
 (i.e.,
 
 converting scores to money). The FDO thus selected a conversion method that had been used on other CPAF contracts, which awarded fees from zero percent to 100 percent of the award pool spread linearly over performance ratings from 60 to 100 at a rate of 2.5 percent of the potential award fee per rating point. Under this method, Bumside-Ott would only receive an award fee for performance that received a rating greater than
 
 60
 
 — ie., that was better than “Submarginal.”
 

 Neither Bumside-Ott nor any other offer- or ever questioned the Navy before the contract was awarded regarding the method for conversion of performance ratings into award fee percentages covered by the contract. In spite of — or perhaps because of — the missing conversion method, Bumside-Ott believed the contract required a “1-to-l” method for calculating award fees. Under Bumside-Ott’s interpretation, the contract would result in award fees from zero to 100 percent of the award pool spread linearly over performance
 
 *-727
 
 ratings from 0 to 100 at a rate of one percent per rating point (rather than over the narrower ratings range of 60 to 100 with a 2.5 percent step, as under the FDO’s chosen method). As an example, under the “1-to-l” conversion method, a performance rating of 80 would result in an award fee of 80 percent of the award pool. Under the method used by the FDO, in contrast, a rating of 80 would only result in an award fee of 50 percent of the award fee pool (80 less 60, multiplied by 2.5 percent). Bumside-Ott completed the contract on September 30, 1993, earning an average performance score of 93.65 and receiving 84.15 percent of the available award fee pool, instead of the 93.65 percent of the pool to which it felt it was entitled under its “1-to-l” conversion method.
 

 Burnside-Ott disputed the award fee determination method used by the FDO throughout the performance of the AIMD contract. By letters in September and October 1990, Bumside-Ott complained to the Contracting Officer (CO) that the imposition of a conversion chart to calculate award fees was “without contractual basis.” The CO replied to the complaints, asserting that the FDO had acted properly in using a conversion chart to determine the award fees. Burnside-Ott submitted a certified claim to the CO, dated April 8,1991, seeking additional award fees based on a “1-to-l” conversion formula. The CO responded to the claim on June 11,1991, by repeating the government’s earlier position and stating: “the determination of award fee is excluded from the Disputes clause and ... there is no right to appeal such determinations.” Bumside-Ott filed a timely appeal to the Board.
 

 II
 

 Before the Board, the government moved to dismiss for want of jurisdiction, citing Clause H-21 of the contract and arguing that the effect of the clause is to deprive the Board of jurisdiction to hear the dispute. Burnside-Ott countered that the clause is ineffective to remove the statutory right of appeal found in the Contract Disputes Act of 1978(CDA), 41 U.S.C. §§ 601-613 (1994), and that the appropriate standard of review of CO decisions is
 
 de novo
 
 before the Board.
 

 The Board rejected the positions of both parties, and concluded that it had jurisdiction, but that the extent of its review was limited to ascertaining whether the CO acted arbitrarily or capriciously in approving the FDO’s conversion method, in effect adopting the Wunderlich Act standard of review for instances in which the parties seem to have contracted away their full CDA
 
 de novo
 
 review rights.
 
 [1]
 
 On the merits, the Board held that the CO and FDO acted reasonably and within their discretion, and violated no contractual, statutory, or regulatory requirements. The Board also held that Bumside-Ott’s interpretation of Clause H-21 was inconsistent with prior practice and with the purpose of award fee contracting; the Board thus concluded that Burnside-Ott was required to call the inconsistency to the government’s attention before taking advantage of any ambiguity in the clause.
 

 Ill
 

 On appeal here, the parties in their briefs essentially repeat the positions they took before the Board, insofar as the Board’s jurisdiction to hear Bumside-Ott’s claim is concerned. In particular, the government argues that Clause H-21 removed the Board’s jurisdiction and Bumside-Ott argues that the clause was ineffective to remove jurisdiction. In addition, the government in the alternative argues in its brief that if we find there is jurisdiction in the Board to hear Bumside-Ott’s claim, then the Board’s review standard should be restricted to a determination of whether the CO’s actions were arbitrary and capricious, and that our review of the Board’s factual findings should be limited to a determination of whether those findings are arbitrary, capricious, based upon less than substantial evidence, or rendered in bad faith.
 
 See
 
 41 U.S.C. § 609(b) (1994).
 

 
 *-726
 
 During oral argument, the court expressed its view that the government’s lead argument on jurisdiction, as expressed in its brief, was that the Board lacked jurisdiction in this case. The government disagreed with that reading of its brief, and instead asserted that the Board indeed had jurisdiction to hear this case pursuant to the CDA, and that its review was
 
 de novo.
 
 In particular, the government asserted that the Board had
 
 de novo
 
 review to decide whether Clause H-21 required the FDO to use the “1-to-l” conversion method espoused by Bumside-Ott. As a result, the parties now agree that CDA jurisdiction lay at the Board to hear the dispute; they only differ as to the outcome that should be reached on the merits.
 

 rv
 

 Since the parties cannot by consent confer subject matter jurisdiction on the Board, and thus on this court, we must independently satisfy ourselves that the government is now correct in the position it takes on the issue. Generally, the parties to a contract may voluntarily waive certain rights, including the right to receive an impartial and independent federal adjudication, otherwise available to the parties under the law.
 
 See Commodity Futures Trading Comm’n v. Schor,
 
 478 U.S. 833, 848-49, 106 S.Ct. 3245, 3255-56, 92 L.Ed.2d 675 (1986). “Generally, a provision in a government contract that violates or conflicts with a federal statute is invalid or void.”
 
 American Airlines, Inc. v. Austin,
 
 75 F.3d 1535, 1538 (Fed.Cir.1996). Under the CDA, an agency’s final determination as to facts “shall not be binding in any subsequent proceeding” before the Board or Court of Federal Claims, 41 U.S.C. § 605(a) (1994), and the appeal “shall proceed
 
 de novo
 
 in accordance with the rules of the appropriate court.” 41 U.S.C. § 609(a)(3);
 
 see
 
 § 607(d);
 
 Assurance Co. v. United States,
 
 813 F.2d 1202, 1206 (Fed.Cir.1987).
 

 Proper resolution of this jurisdictional issue requires a closer look at Clause H-21. The relevant sentence of that clause states: “The Award Fee decision is a unilateral determination made by the FDO and is not subject to the ‘DISPUTES’ Clause of the contract.” The sentence contains two parts, one granting unilateral discretion to the FDO and one purporting to remove the FDO’s determination from the coverage of the Disputes clause. The latter provision in the sentence is a jurisdiction defeating mechanism, while the former is a discretion conferring provision.
 

 The CDA was a comprehensive overhaul of the process for reviewing claims related to government contracts. It provided for substantive changes in the law concerning the handling and review of contract disputes. As part of those changes, the CDA specifically provides that review of contract claims “shall” proceed de
 
 novo.
 
 Thús, any attempt to deprive the Board of power to hear a contract dispute that otherwise falls under the CDA conflicts with the normal
 
 de novo
 
 review mandated by the CDA and subverts the purpose of the CDA. In government contract disputes, unlike contract disputes between two private parties, the initial determination in each dispute is made by one of the parties,
 
 i.e.,
 
 the CO. Congress commanded that the CO’s decision on any matter cannot be denied Board review. To the extent that the Government attempts to use the contract provision to defeat jurisdiction, Clause H-21 cannot stand.
 

 This interpretation conforms with the purpose of the CDA “to provide for a fair and balanced system of administrative and judicial procedures for the settlement of claims and disputes relating to Government contracts,” H.R.Rep. No. 95-1556, at 5 (1978), and to “equalize the bargaining power of the parties when a dispute exists.” S.Rep. No. 95-1118, at 1 (1978),
 
 reprinted in
 
 1978 U.S.C.CA..N. 5235, 5235. To that end, there was great concern that the previous system for contract claim review provided only very limited remedies to contractors, through a cumbersome and expensive process.
 
 See
 
 124 Cong. Rec. H31,645 (daily ed. Sept. 26, 1978) (statement of Rep. Kindness). The core of concern was with the government’s ability, through the Disputes clause, to commandeer the final decision on all disputes of fact arising under the contract.
 
 See
 
 124 Cong. Rec. H31,644 (daily ed. Sept. 26, 1978) (statement of Rep. Harris).
 

 
 *-725
 
 Permitting parties to contract away Board review entirely would subvert this purpose and return contractors to the position they occupied before the passage of the CDA. The government could insert jurisdiction defeating provisions in RFPs and contracts as desired, thus skewing the balance between it and contractors. As a result, contractors would lose the protections sought by Congress in enacting the CDA.
 

 The government’s brief cites this court’s decision in
 
 Emerald Maintenance, Inc. v. United States,
 
 925 F.2d 1425 (Fed.Cir.1991), for the proposition that parties to a government contract may specifically agree that certain disputes will not be subject to the Disputes clause of the government contract.
 
 Emerald Maintenance
 
 involved two roofing contracts which incorporated the Davis-Ba-eon Act wage rate clause, providing for computation of wage rates “not less than those contained in the wage determination of the Secretary of Labor,” which was attached to the contracts.
 
 See
 
 925 F.2d at 1426. The contracts also noted that “[disputes arising out of the labor standards provisions of this contract shall not be subject to the general Disputes Clause of this contract,” but instead were to be resolved in accordance with Department of Labor procedures. Regarding review of the wage determinations, this court stated:
 

 [Tjhere is little doubt that an objective reading of the contracts indicates that the parties intended that the specific Disputes provision, stating that disputes arising out of labor standards are not to be subject to the general disputes clause, but are to be resolved in accordance with the procedures of the Department of Labor, predominates over the general provision that the Board has jurisdiction to decide any appeal from a contracting officer. It is well established that the specific governs over the general, and the language of these provisions compels the result.
 

 Id.
 
 at 1429.
 

 In
 
 Emerald Maintenance,
 
 the disputed contract clause removed wage determinations from review under the CDA and instead provided for review of those determinations under the Davis-Bacon Act. That Act states that the specifications for certain enumerated government contracts “shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing. . . .” 40 U.S.C. § 276a(a) (1994);
 
 see
 
 29 C.F.R. § 5.5 (1996). It is certainly true that a specific act of Congress may trump a more general act of Congress, as in
 
 Emerald Maintenance.
 
 In the present case, however, Clause H-21 does not cleave to any act of Congress, and may not on its own alter the Board’s review under the CDA. Indeed, the court in
 
 Emerald Maintenance
 
 noted the prominence of the Davis-Bacon Act in its discussion, where it stated: “Emerald may have had little choice in the matter [of which tribunal would review wage determinations] due to the Davis-Bacon Act.” 925 F.2d at 1429. Thus, the CDA trumps a contract provision inserted by the parties that purports to divest the Board of jurisdiction, unless the contract provision otherwise depriving jurisdiction is itself a matter of statute primacy.
 

 V
 

 Upon the
 
 de novo
 
 review required of the Board by the CDA, the Board had to decide whether the FDO acted in accordance with the rights and obligations created by the contract. Here, the Board reviewed the FDO’s determination to decide whether it was arbitrary or capricious. The Board treated the dispute as a jurisdictional question, and looked to allegedly analogous eases and the review provisions of the CDA in fashioning a deferential standard of review. That was error.
 

 The deference the Board must give the CO and FDO comes not from the CDA directly, but from interpretation of the contract terms, an interpretation accomplished
 
 de novo
 
 pursuant to the CDA. Clause H-21 gives unilateral discretion to the FDO in making the award fee determination in its discretion conferring provision, which states: “The Award Fee decision is a unilateral determination made by the FDO.” Therefore, the Board may not reverse the CO’s affirmance of the FDO’s discretionary decision
 
 *-724
 
 unless the discretion employed in making the decision is abused, for example, if the decision was arbitrary or capricious. This standard of review echoes the standard applied by the Board, albeit from a different source. Therefore, the Board’s grant of deference to the FDO’s determination under the jurisdiction defeating provision of Clause H-21 rather than under the discretion conferring provision was erroneous, but does not require reversal.
 

 VI
 

 Coming to the merits of this case, Bum-side-Ott argues that it relied on a reasonable interpretation of a latently ambiguous contract. It contends that before the AIMD contract, it had seen many other RFPs that included conversion charts. Thus, when it received the RFP without a conversion chart in this case, it simply assumed that the contract would not use a conversion chart and would instead utilize a “1-to-l” conversion between the performance rating and the percentage of award fee. Burnside-Ott asserts that its reading of the RFP was reasonable because the elimination of the conversion chart on the RFP gave the solicitation a different meaning than the other RFPs which included conversion charts.
 

 The government in turn argues that the Board properly determined that the FDO’s award fee determinations were reasonable. It asserts that the lack of a conversion formula in the contract is consistent with the contract provision in H-21 that the fee is to be determined unilaterally by the FDO, and that the use of conversion charts or “1-to-l” ratios in other contracts did not preclude the use of a conversion chart here. Finally, the government contends that to the extent there was an ambiguity in the contract, it was patent, thus requiring inquiry on the part of Burnside-Ott.
 

 On review, “the decision of the agency board on any question of law shall not be final or conclusive.” 41 U.S.C. § 609(b) (1994). Contract interpretation is a question of law which we review
 
 de novo. Alaska Lumber & Pulp Co. v. Madigan,
 
 2 F.3d 389, 392 (Fed.Cir.1993). Whether a contract term is ambiguous also is a question of law.
 
 Grumman Data Sys. Corp. v. Dalton,
 
 88 F.3d 990, 997 (Fed.Cir.1996).
 

 A contract must be interpreted as a whole in a manner that gives reasonable meaning to all its parts and avoids conflicts in, or surplusage of, its provisions.
 
 Dalton v. Cessna Aircraft Co., 98 F.3d
 
 1298, 1305 (Fed. Cir.1996). A contract term is ambiguous if it is susceptible to more than one reasonable interpretation.
 
 See C. Sanchez & Son, Inc. v. United States,
 
 6 F.3d 1539, 1544 (Fed.Cir. 1993). If the contract language is latently ambiguous, the contractor is entitled to recovery based on a reasonable interpretation of the contract. If the contract language is patently ambiguous, however, the contractor must inquire about the ambiguity before bidding.
 
 Dalton, 98
 
 F.3d at 1306. By failing to inquire, the contractor forfeits the opportunity to rely upon its unilateral, uninformed interpretation and bears the risk of misinterpretation.
 
 Id.
 

 We agree with the government that there is no ambiguity in the contract and that the FDO here had the authority to act unilaterally. Burnside-Ott cannot point to any part of the contract that requires the award fee to correspond directly with the performance rating. Indeed, the text of Clause H-21 unmistakably grants unilateral discretion to the government to determine the award fee. The choice of conversion method was left by contract to the FDO and should not be disturbed by the Board or by this court unless the CO’s affirmance of the FDO’s decision was arbitrary or capricious. There is no evidence of record to show that the CO acted arbitrarily or capriciously.. Therefore, the decision of the Board is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The Wunderlich Act governed review of agency actions before the CDA was passed, providing that agency determinations concerning government contract disputes were "final and conclusive unless ... fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or ... not supported by substantial evidence.”
 
 See
 
 41 U.S.C. § 321 (1994).