Opinion for the court filed by Circuit Judge REYNA.
Dissenting opinion filed by Circuit Judge BRYSON.
REYNA, Circuit Judge.
The Minesen Company (“Minesen”) appeals the final decision of the Armed Services Board of Contract Appeals (“ASBCA” or “Board”) which granted the motion to dismiss of the United States Army’s Morale, Welfare, and Recreation Fund (“the Fund”). Minesen has been under contract with the Fund since 1993 to build and operate a hotel facility at a military base on Oahu Island, Hawaii. With eighteen years remaining on the agreement, the ASBCA determined that the Fund breached the core of the contract and the parties entered the quantum phase of the dispute. While in the quantum phase, Minesen filed a separate complaint alleging that the Fund had done nothing to cure its ongoing breach. The ASBCA dismissed Minesen’s second complaint as duplicative of the first breach of contract action. Minesen appeals the ASBCA dismissal of its second complaint. Because we find that Minesen voluntarily waived its right to appeal to this court under its negotiated contract with the Fund, we dismiss.
I. Background
Minesen, a small business from Denver, Colorado, was created for the purpose of acquiring and fulfilling government contracts. In January of 1993, after several years of negotiation, Minesen and the Fund entered into Contract No. NAFBA393-C-0001 (“the Contract”) to create accommodations for travelling military personnel. The Contract provided that Mine-sen would construct and operate, for a term of thirty-two years, a “transient lodging facility” at Schofield Barracks in central Oahu. Joint Appendix (“J.A.”) 272. Schofield Barracks is an 18,000 acre site twenty-three miles northwest of Honolulu, and is the largest Army installation in Hawaii. The Minesen lodging facility, to be built on four acres leased from the government, became known as the Inn at Schofield Barracks (“the Inn”). The Inn was to feature 184 rooms with kitchenettes, as well as other hotel amenities such as a vending area, guest laundry, playground, convenience store, and deli. Id. On a secure installation, the Inn would offer lodging only to eligible active and temporary military personnel, their families, and qualifying veterans. Under the Contract, Minesen’s lease and operation of the Inn terminates in 2026. Id.
In addition to revenue generated operating the facility, Minesen’s consideration for the bargain was that the Inn was officially deemed “government quarters” under the Joint Federal Travel Regulation (“JFTR”). Id. at 274. This designation was significant because it required travelling military personnel to patronize the Inn or else forfeit reimbursement for lodging costs. The Contract stated:
The completed [Inn] will fall within the current Joint Federal Travel Regulation *1334 definition of government quarters.... Travelers receiving government per diem payment, in order not to forfeit their per diem entitlement, will be required to patronize the [Inn] on a mandatory basis as long as confirmed reservation priorities are in accordance with those provided at Section III, Operation Requirements.
Id. The Contract did not require the Fund to deliver any specific level of occupancy to the Inn.
The Contract indicated on its face that “NO FUNDS OF THE UNITED STATES GOVERNMENT WILL BE PAID OR BE DUE TO THE CONTRACTOR BY VIRTUE OF THIS CONTRACT.” Id. at 271 (emphasis original). In the definition section, the Contract further specified that: “The Fund is ... a nonappropriated fund instrumentality (NAFI) of the United States.... The Government is not a party to this contract, and no funds appropriated by Congress are in any way obligated or can be obligated by virtue of any provision of this contract.” Id. at 273.
Significant for purposes of this appeal are the Contract’s express provisions regarding dispute resolution.' In the “Disputes Clause” at § 11(6), the Contract stated:
a. This contract is not subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613).
c. All disputes arising under or relating to this contract shall be resolved under this clause.
g. The Contracting Officer’s decision shall be final unless the Contractor appeals as provided in paragraph h. of this clause.
h. The Contracting Officer’s final decision may be appealed by submitting a written appeal to the Armed Services Board of Contract Appeals within 90 days of receipt of the Contracting Officer’s final decision. Decisions of the Armed Services Board of Contract Appeals are final and are not subject to further appeal.
J.A. 276-78 (emphasis original). On February 1, 1993, the parties executed Lease No. DACA84-1-91-14, which became an attachment to the Contract. After the parties finalized the Contract in early 1993, the Inn was constructed and opened for business by June 1994.
In 1997 and 1998, the JFTR, the travel regulation incentivizing military personnel to patronize the Inn, was amended. As a result of the amendments, the Department of Defense began reimbursing for any lodging costs up to the amount charged at government quarters, whether or not the traveler actually stayed at government quarters such as the Inn.
On June 7, 1999, Minesen filed a certified claim with the Contracting Officer (“CO”) in which it alleged that the JFTR amendments eliminating the mandatory per diem forfeiture breached the Contract and negatively impacted occupancy rates. Minesen sought (1) $2,541,670.14 in lost revenues through May of 1999, and (2) future performance, or alternatively, immediate termination of the Contract with a payment of $25,506,325.00.
The CO denied the claim. On February 18, 2000, Minesen submitted further claims to the CO, seeking, inter alia, anticipatory profits for breach of contract. These claims were also denied by the CO. Mine-sen timely appealed both claims to the ASBCA, a right guaranteed in the Contract.
On November 20, 2006, after a five-week merits hearing, the ASBCA issued its deci *1335 sion. Minesen Co., ASBCA Nos. 52488, 52811, 07-1 BCA ¶ 33,456 (the “2006 Decision”). The ASBCA rejected Minesen’s argument that the Fund had repudiated the Contract by acquiescing to the changes in the JFTR. The administrative judge (“AJ”) found no outright repudiation of the Contract because the Fund never stated that it refused to perform. But the AJ also found that the Contract provision requiring travelers receiving the per diem reimbursement to patronize the Inn
constituted the core of Minesen’s benefit of the bargain. The Inn was located on a secure military installation and was not open to the general public. In order to capture a market for its services, Minesen had to rely on an incentive to encourage official travellers [sic] to stay at the Inn. This device was the mandatory forfeiture provision of Clause 7. In acquiescing to the 1997 and 1998 changes in the JFTR which removed this mandatory forfeiture provision, the Fund affected [sic] a basic alteration in the parties’ contractual relationship.
Id. at 123-24. The ASBCA concluded that the Fund should have fashioned a remedy to the JFTR amendments, ranging anywhere from a new reimbursement scheme to a complete termination of the Contract for convenience. “It failed to do so,” the ASBCA held, “and, thus, breached the contract, entitling Minesen to recover damages.” Id. at 124.
The ASBCA remanded the case to the CO for a determination of damages. Minesen claimed entitlement to past lost profits; interest; and future lost profits. Minesen’s statement of costs calculated “anticipatory profits from January 1, 2008 through the end of Minesen’s contract equal [to] $34,024,454.” J.A. 314. The Fund identified various documents it claimed were necessary to verify damages, particularly those showing what Minesen would have earned from soldiers who declined to stay at the Inn but who did not forfeit the lodging reimbursement. Mine-sen did not promptly provide, among other things, its audited financial statements for FY 1994 through FY 1996, preventing the Fund from comparing the Inn’s profitability before and after breach.
In early 2008, barely a year into the quantum phase, Minesen filed a new complaint (the “2008 Claim”) alleging that, subsequent to the 2006 Decision, the Fund had failed to cure its ongoing breach. Minesen asserted that failure to cure over the intervening fifteen months constituted an independent ground of material breach as of December 31, 2007, given that eighteen years were left on the Contract.
The CO denied the 2008 Claim, stating: “[T]here is no new dispute. This claim duplicates claims which you previously filed ... and to which the Board, as described above, has already rendered a decision on the merits.” Id. at 150. The CO noted that the earlier action “is now in the quantum phase in which the parties are working to effect settlement of the dispute.” Id. Minesen again appealed to the ASBCA.
On July 7, 2008, Minesen moved for partial summary judgment, alleging that the Fund had done nothing to cure its continuing breach despite having been found liable in 2006. The Fund countered with a motion to dismiss, arguing that the 2006 Decision did not require anything more than what it was presently doing— cooperating in the quantum phase on remand. According to the Fund, no new claim was warranted because it “has regularly kept Minesen informed of the status of its efforts to calculate damages, and thus, has provided adequate assurances of a remedy.” Minesen Co., ASBCA No. 56346, Slip Op. at 5 (July 16, 2010).
*1336 On July 16, 2010, the ASBCA denied Minesen’s motion for partial summary judgment and granted the Fund’s motion to dismiss. The ASBCA found genuine issues of material fact precluding summary judgment for Minesen, including evidence that throughout the quantum phase the Fund actively pursued discovery, conducted an audit, and responded to requests. The ASBCA also held that the 2008 Claim was merely duplicative, and not a new cause of action:
We also agree with the Fund that Mine-sen’s “new” claim in ASBCA No. 56346 is duplicative. The factual premise of this claim is in dispute, as is its legal conclusion that it has identified “a new, independent claim for material breach.” As the Fund states in its brief, “the only ‘new’ facts the Appellant cites are those related to the amount of time the parties are taking to resolve the controversy in ASBCA Nos. 55996 and 55997.” ASBCA No. 56346, thus, is not a new cause of action, is duplicative, and must be dismissed.
Id. at 7. Pursuant to the ASBCA final determination dismissing the 2008 Claim, Minesen appealed to this court.
II. Discussion
Minesen argues on appeal that the ASBCA dismissal of the 2008 Claim was improper because it constitutes a new and distinct claim over that decided in the 2006 Decision. The Fund responds that this court should not even reach the merits of whether the new claim is duplicative because at least two threshold defects estop Minesen’s appeal before this court.
First, according to the Fund, the decision of the ASBCA was not rendered under the Contract Disputes Act (“CDA”), 41 U.S.C. § 7101 et seq., such that the Federal Circuit lacks statutory jurisdiction over this case. The Fund argues that the CDA does not apply to the Contract because the Fund is a nonappropriated fund instrumentality (“NAFI”). Second, the Fund argues that Minesen waived any right to appeal to the Federal Circuit pursuant to the disputes clause of the Contract, which states that ASBCA decisions are final. The Fund maintains that this is a valid and enforceable provision that expressly precludes appeal to this court by consent of the parties.
A. Statutory Jurisdiction
Under 28 U.S.C. § 1295(a)(10), this court has jurisdiction to hear appeals from an ASBCA final decision. The Fund argues that this court lacks jurisdiction to consider this appeal because it is a non-enumerated NAFI, as agreed in the Contract. NAFIs are “federal government entities whose monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales.” El-Sheikh v. United States, 177 F.3d 1321, 1322 (Fed.Cir.1999) (internal quotation marks omitted). Under the “NAFI doctrine,” entities that have NAFI status are not typically subject to suit on contract claims because any damages awarded against them would be paid using appropriated funds. See Furash & Co. v. United States, 252 F.3d 1336, 1338-43 (Fed.Cir.2001). This court has clearly held that it lacks jurisdiction under the CDA to hear contract claims against NAFIs. Id. at 1342-44 (holding the NAFI doctrine applicable to CDA cases).
Minesen counters that our recent holding in Slattery v. United States, 635 F.3d 1298 (Fed.Cir.2011) (en banc), changes this rule. The court in Slattery indeed concluded that the Tucker Act provides jurisdiction over claims against NAFIs. Id. at 1301 (“Tucker Act jurisdiction does not depend on and is not limited by whether *1337 the government entity receives or draws upon appropriated funds.”). While Slattery did not directly reach the CDA in its holding, Minesen asserts that the jurisdictional analysis would be identical. Thus, Minesen invites this court to view the recent rescission of the NAFI doctrine as applied to the Tucker Act as necessarily eliminating the NAFI doctrine’s applicability to the CDA also.
We decline to decide this issue here. While we are generally obligated to resolve jurisdictional challenges first, Supreme Court precedent only requires federal courts to answer questions concerning their Article III jurisdiction—not necessarily their statutory jurisdiction—before reaching other dispositive issues. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 95-97, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 59 (1st Cir.2003) (“[Wjhile Article III jurisdictional disputes are subject to Steel Co., statutory jurisdictional disputes are not.”). Here, the jurisdictional issues are strictly statutory, and not constitutional. Even without this exception for statutory jurisdictional disputes, Justice Breyer, concurring in Steel Co., noted with approval that “[t]his Court has previously made clear that courts may ‘reserve difficult questions of ... jurisdiction when the case alternatively could be resolved on the merits in the favor of the same party.’ ” 523 U.S. at 111, 118 S.Ct. 1003 (citing Norton v. Mathews, 427 U.S. 524, 532, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976)); see also Bowers v. Nat’l Collegiate Athletic Ass’n, 346 F.3d 402, 415-16 (3d Cir.2003); cf. United States v. Caruthers, 458 F.3d 459, 472 n. 6 (6th Cir.2006).
Because the question of whether claims against NAFIs can be made pursuant to the CDA is complex post -Slattery, and because the question has a statutory provenance, we will assume jurisdiction for present purposes and proceed directly to the substance of the appellate waiver argument.
B. Appellate Waiver
The parties agreed in the Contract’s “Dispute Clause” at § II(6)(h) that the ASBCA was the exclusive and final appellate review forum: “The Contracting Officer’s final decision may be appealed by submitting a written appeal to the Armed Services Board of Contract Appeals within 90 days of receipt of the Contracting Officer’s final decision. Decisions of the Armed Services Board of Contract Appeals are final and are not subject to further appeal.” J.A. 278. Minesen does not dispute the plain language interpretation of this contract provision, nor does it dispute that it voluntarily and knowingly agreed to the finality of ASBCA decisions. Minesen instead contends that it could not legally consent to waive its statutory right under 41 U.S.C. § 7107(a) to an appeal before the Federal Circuit. In sum, Mine-sen concedes that it contracted to curtail its right to review by this court, but now argues that its obligation is contrary to the CDA and public policy embodied therein.
i. Waiving Federal Circuit Appeal Is Not Contrary to the CDA
According to Minesen, its right to appear before the Federal Circuit is guaranteed by Congress, despite any contrary contract language to which it may have agreed. Minesen argues—without reference to any specific provision of the CDA—that Congress did not intend that the right to appeal to this forum be waivable.
In order to conclude that Congress intended for the CDA to include protection against waiving appeals from the ASBCA to this court, that intention must be dis *1338 cernable from the text or the legislative history. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (“We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.”); Brooklyn Sav. Bank v. O’Neil, 324 U.S. 697, 705, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (“[T]he question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute.”); McCall v. U.S. Postal Serv., 839 F.2d 664, 667 (Fed.Cir.1988) (holding that appellant did not show that his voluntary waiver of a statutory right to appeal was contrary to congressional intent). Thus, the burden is on Minesen, as the party opposing enforcement of a contractual waiver, to show that Congress intended to preclude such waivers. Id.
We find no such intention here. The plain words and meaning of the relevant provision, 41 U.S.C. § 7107(a)(1), do not proscribe a waiver of appeal rights through contract. The provision reads:
Judicial review of agency board decisions
(a)Review.
(1) In general. The decision of an agency board is final, except that—
(A) a contractor may appeal the decision to the United States Court of Appeals for the Federal Circuit within 120 days from the date the contractor receives a copy of the decision; or
(B) if an agency head determines that an appeal should be taken, the agency head, with the prior approval of the Attorney General, may transmit the decision to the United States Court of Appeals for the Federal Circuit for judicial review under section 1295 of title 28, within 120 days from the date the agency receives a copy of the decision.
Id. If Congress did not want this right altered by agreement, it would have said so; but this provision contains no express prohibition on appellate waivers beyond the ASBCA.
Nor does anything in the CDA’s legislative history demonstrate that Congress did not intend for parties to be able to agree to the finality of ASBCA decisions. On the contrary, Congress recognized first among the express purposes of the CDA “inducting] resolution of more contract disputes by negotiation prior to litigation,” S.Rep. No. 95-1118, at 1 (1978), 1978 U.S.C.C.A.N. 5235, 5235 and “encouraging] the informal, quick resolution of disputes before they can develop into expensive and time-consuming administrative tangles or litigation,” 124 Cong. Rec. 31,-645 (1978).
Recognizing these legislative goals, we do not find that Congress wanted to prevent parties from properly contracting to simplify dispute resolution. Agreeing to the finality of ASBCA decisions accomplishes precisely what Congress intended, at least in part, in passing the CDA. See Pathman Constr. Co. v. United States, 817 F.2d 1573, 1578 (Fed.Cir.1987) (“A major purpose of the [Contract] Disputes Act was to induce resolution of contract disputes with the government by negotiation rather than litigation.”) (internal quotation marks omitted); cf. 41 U.S.C. § 7103(h)(1) (permitting parties to fashion “other mutually agreeable procedures” for resolving claims). Having agreed to simplify disputes by pursuing resolution under the terms of the Contract, Minesen should be held to its bargain as it does not conflict with—indeed it advances—statutory purposes. See Mitsubishi Motors, 473 U.S. at 628, 105 S.Ct. 3346 (“Having made the *1339 bargain, ... the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.”).
ii. Waiving Federal Circuit Appeal Is Not Contrary to the CDA’s Purpose
Minesen argues as a matter of public policy that allowing a party to waive Federal Circuit appeal skews the balance between the government and contractors during contract negotiations. Minesen argues that its promise to waive appeal rights to the Federal Circuit should be held unenforceable because of the government’s superior bargaining power.
a. Extensive Case Law Permits Voluntary Waivers
The Supreme Court and this court have long held that the government, if not otherwise prohibited by statute, can enforce a voluntary contractual waiver with the same force as a private party, notwithstanding superior bargaining power. Town of Newton v. Rumery, 480 U.S. 386, 392-94, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); see also Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) (“When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.”); Do-Well Mach. Shop, Inc. v. United States, 870 F.2d 637, 641 (Fed.Cir.1989) (“Just as the common law limits the government’s power to contract in the same way it limits a private person, it also protects the government’s power to contract in the same way it protects a private person.”) (emphasis original).
In Rumery, the Supreme Court addressed an argument analogous to Mine-sen’s and held that the mere possibility of intimidation in contracting with the government cannot justify invalidating all such agreements. 480 U.S. at 392-94, 107 S.Ct. 1187. The Court explained that parties are often forced to make difficult choices which effectively forego statutory or constitutional rights. Id. at 393, 107 S.Ct. 1187. Parties can be held to such obligations if contracted knowingly and voluntarily. Id.
In McCall, this court held that a postal employee could enter into an agreement with the government waiving his statutorily conferred right to appeal an agency disciplinary action. 839 F.2d at 665. The agreement at issue concluded by stating that, “the removal will be ... with no rights of appeal to any forum.... ” Id. When the removal action was later appealed despite the express agreement, the AJ dismissed, finding McCall’s waiver of appellate rights valid and enforceable. Id. at 666. This court affirmed, directly addressing McCall’s contention that such waivers are unenforceable as against public policy due to unequal bargaining power. Id. at 666-67. The court explained:
The waiver agreement in this case, like that in Rumery, reflects a rational judgment on the part of McCall____Because his choice was knowing and voluntary, the public interest against involuntary waivers of rights does not weigh against the enforcement of this agreement and it is not void as a matter of public policy.
Id. at 667. The McCall court added that the possibility of coercion in a civil context was less serious than what was acceptable in Rumery, where criminal sanctions loomed. Id.
This court has further held that contractors can waive even constitutional rights in litigation with the government. Seaboard Lumber Co. v. United States, 903 F.2d 1560 (Fed.Cir.1990). The Fund argues based on Seaboard that if contractors can *1340 waive a constitutional right to a jury by contracting into a particular forum, they can also waive a statutory right to appeal by contracting out of the Federal Circuit. In Seaboard, a private party had accepted a government contract provision providing for dispute resolution in a forum where there was no entitlement to a jury. When the provision was contested, this court found that, “[t]he Supreme Court has long recognized that a private litigant may waive its right to a jury and to an Article III court in civil cases,” either expressly or impliedly. Id. at 1563. The Federal Circuit rearticulated the voluntary nature of the government-contractor relationship in negotiation: “ ‘Respondents were not compelled or coerced into making the contract [with the government]. It was a voluntary undertaking on their part. As competent parties they have contracted for the settlement of disputes in an arbitral manner.’ ” Id. at 1565 (quoting United States v. Wunderlich, 342 U.S. 98, 100, 72 S.Ct. 154, 96 L.Ed. 113 (1951)).
In this case, the record and pleadings indicate that Minesen freely agreed to the finality of ASBCA decisions. While a promise can be unenforceable if the interest in its enforcement is outweighed by public policy, Rumery, 480 U.S. at 392,107 S.Ct. 1187, public policy is not per se offended when a sophisticated contractor knowingly and voluntarily agrees to an appellate waiver provision denying Federal Circuit review.
b. Bumside-Ott Does Not Apply in this Case
This court in Burnside-Ott Aviation Training Center v. Dalton, 107 F.3d 854 (Fed.Cir.1997), analyzed public policy concerns associated with waiving review of contract disputes in a narrow context. Bumside-Ott held that parties may not waive review of CO decisions to the ASBCA, but it did not address waiving appeals from the ASBCA to the Federal Circuit.
The court in Bumside-Ott reminded generally that “parties to a contract may voluntarily waive certain rights, including the right to receive an impartial and independent federal adjudication, otherwise available to the parties under the law.” Id. at 858. However, the court determined that under the CDA at least one impartial review of CO decisions was necessitated by the statute’s goal of “equalizing] the bargaining power of the parties when a dispute exists,” a requirement satisfied by review in the ASBCA. Id. (citing S.Rep. No. 95-1118, at 1). Whereas the ASBCA is a neutral tribunal and not a representative of the agency,[1] the CO is unquestionably biased, permitting the government to “commandeer the final decision on all disputes of fact arising under the contract” if its decisions remain unreviewable. Id. at 858. The court explained:
In government contract disputes, unlike contract disputes between two private *1341 parties, the initial determination in each dispute is made by one of the parties, ie., the CO. Congress commanded that the CO’s decision on any matter cannot be denied Board review.... Permitting parties to contract away Board review entirely would subvert this purpose and return contractors to the position they occupied before the passage of the CDA.
Id. at 858-59.
Minesen is not in the same situation described in Bumside-Ott, wherein the contractor was stuck with the determination of the CO, deemed “one of the parties” to the case. Id. at 858. This court confirmed that Congress “provide[d] a fair and balanced system” under the CDA to review claims related to government contracts, id., including unwaivable contractor access to the ASBCA for a de novo review of CO determinations, recourse sufficient to allay policy concerns inherent in the CDA. There is no suggestion in Bum-side-Ott law that appeal to this court is additionally required to equalize bargaining power. Id.; see also Seaboard, 903 F.2d at 1565.
An unwaivable right to ASBCA review as distinguished from optional review before the Federal Circuit is supported by the CDA’s legislative history. Congress intended under the CDA that contractors benefit from a “flexible system that provides alternative forums for resolution of particular kinds of disputes,” either in the federal courts or before agency boards. S.Rep. No. 95-118, at 13. Thus, while Congress ensured immutable access to the United States Court of Federal Claims (“Court of Federal Claims”) under § 7104(b) because “[cjontractors should not be denied a full judicial hearing on a claim they deem important enough to warrant the maximum due process available under our system,” for contractors desiring a simplified process Congress provided another option under the CDA—agency boards, “the least expensive, most expeditious forum available.” Id. at 12. Congress explained that
The aim of any remedial system is to give the parties what is due them as determined by a thorough, impartial, speedy, and economical adjudication .... The claimant should be able to choose a forum according to the needs of his particular case; that is, one where the degree of due process desired can be balanced by the time and expense considered appropriate for the case.
Id. at 13. The CDA thus enlarged the contractor’s options for dispute resolution: “Congress mandated that the government had to include in its contracts the broader review provisions set out in the CDA, that is, the dual avenues of review either by appeal to a Board of Contract Appeals or by a direct access suit in the Court of Claims.”[2] Seaboard, 903 F.2d at 1565.
The dissent contends that exercising the option for flexible, expeditious review provided by the CDA creates an “anomaly.” See Dissent Op. at 1349. Yet neither the CDA nor its legislative history requires that the dual avenues necessarily be coterminous, such that both end by appeals in this court. Agency boards are designed instead for contractors who find that their case does not warrant “the maximum due process available under our system,” and instead opt for “a swift, inexpensive meth *1342 od of resolving contract disputes.” S.Rep. No. 95-118, at 12. Allowing voluntary waiver of § 7107(a) appeals from the ASBCA implements Congress’s intent that the dual avenues serve different ends.
Minesen could have, as the dissent notes, arrived before this court through the Court of Federal Claims pursuant to § 7104(b) (a provision actually containing the “notwithstanding any contract provision” guarantee), but Minesen chose instead to accept ASBCA decisions as final, and filed in that forum when a dispute arose in 2008. Minesen freely chose the path of streamlined adjudication and tailored its dispute resolution mechanisms with the Fund accordingly. We therefore decline Minesen’s invitation to extend Bumside-Ott to this case.
iii. The CDA’s Standard of Review Provision Is Irrelevant to Contractual Waiver
The dissent raises a novel theory that a standard of review provision found at 41 U.S.C. § 7107(b) reveals Congress’s intent that appeals from the ASBCA under § 7107(a) be unwaivable. Dissent Op. at 1346. We disagree.
The theory that § 7107(b) renders Federal Circuit appeal unwaivable was never briefed by Minesen. Minesen did not argue that specific language in the CDA speaks to the appellate waiver issue, and the Fund did not have a proper opportunity to present arguments interpreting § 7107(b). It is well-established that federal appellate courts do not consider arguments not timely raised by the parties. Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This rule permits litigants “the opportunity to offer all the evidence they believe relevant to the issues” and prevents them from being “surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.” Id. (quoting Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941)).
In any event, the dissent’s attempt to infer Congress’s intent by shoehorning § 7107(b)’s “notwithstanding any contract provision” language into § 7107(a) is not convincing. By its terms, § 7107(b) merely defines this court’s standard of review in CDA cases. Thus, while parties can waive Federal Circuit appeal available under § 7107(a), if they elect not to waive § 7107(b) merely sets out the review standard that must be followed. We refuse the dissent’s suggestion to rewrite the statute by applying language from § 7107(b) that Congress declined to provide directly in § 7107(a). See supra § II.B.Í. Congress was aware of how to make CDA provisions unwaivable when it wanted. Do-Well, 870 F.2d at 641 (finding of the CDA that, “[wjhere Congress did not want the Act altered by parties’ agreements, it said so”). Congressional silence in this case should be construed as permitting appellate rights beyond the ASBCA to be governed by the parties’ agreement. See id.
Recognizing the lack of express language in the relevant provision, the dissent relies on the spirit of the repealed Wunderlich Act, Pub.L. No. 83-356, 68 Stat. 81 (1954), to justify a strained interpretation of the CDA. Dissent Op. at 1346-48. The Wunderlich Act of 1954 was passed to legislatively overturn the ruling in United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951). See H.R.Rep. No. 83-1380 (1954). In Wunderlich, a government contract clause provided that factual disputes would be decided by the CO, with right of appeal only to the Secretary of the Interior. 342 U.S. at 99, 72 S.Ct. 154. The effect of Wunderlich was to keep out of the Court of Claims all cases *1343 except those claiming fraud. Id. Congress, to prevent the agency representative from “act[ing] as a judge in his own case,” id. at 103, 72 S.Ct. 154 (Jackson, J., dissenting), “as a matter of grace, provided for narrow judicial review of a contracting officer’s decision” in the Wunderlich Act, Seaboard, 903 F.2d at 1565 (emphasis added). The legislative fix ensured that contractors would always have a right to review CO determinations before the Court of Claims. Id.
In passing the CDA, Congress already renewed the guarantee of direct access from the partial CO to the Court of Federal Claims, “notwithstanding any contract provision ... to the contrary,” 41 U.S.C. § 7104(b). The Wunderlich Act’s “narrow” focus on preventing CO decisions from being unreviewable does not inform our understanding of congressional intent regarding appeals from the impartial ASBCA to this court.
III. Conclusion
The disputed contract provision states that, “[decisions of the Armed Services Board of Contract Appeals are final and are not subject to further appeal.” J.A. 278. We find that Minesen knowingly and voluntarily waived its right to appeal to this court, and we respect the clear intent of the parties agreeing to the finality of the ASBCA result. We dismiss.
DISMISSED
Costs
No costs.

. The ASBCA is described by Congress as a "quasi-judicial” body whose
members serve as administrative judges in an adversary-type proceeding, make findings of fact, and interpret the law. Their decisions set the bulk of legal precedents in Government contract law, and often involve substantial sums of money. In performing this function they do not act as a representative of the agency, since the agency is contesting the contractor’s entitlement to relicf.
S.Rep. No. 95-118, at 26; see also Boeing Petro. Servs., Inc. v. Watkins, 935 F.2d 1260, 1261 (Fed.Cir.1991) (under the CDA, the review boards are established as independent, quasi-judicial forums, entities "quite distinct from” their contracting agencies). Indeed, “[t]he contractor should feel that he is able to obtain his 'day in court’ at the agency boards and at the same time have saved time and money through the agency board process.” S.Rep. No. 95-118, at 25.

. The Federal Courts Improvement Act of 1982, Pub L. No. 97-164, § 105(a), 96 Stat. 25 (amending 28 U.S.C. § 171(a)), established the United States Claims Court. The United States Claims Court inherited the jurisdiction of its predecessor, the United States Court of Claims. Congress renamed it the United States Court of Federal Claims by the Federal Courts Administration Act of 1992, Pub.L. No. 102-572, § 902, 106 Stat. at 4516.