# United States Court of Appeals
# for the Federal Circuit

---

**MICHAEL ETCHEGOINBERRY, ERIK CLAUSEN, BARLOW FAMILY FARMS, L.P., CHRISTOPHER TODD ALLEN, FOR THEMSELVES AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-2196

---

Appeal from the United States Court of Federal Claims in No. 1:11-cv-00564-ZNS, Judge Zachary N. Somers.

---

Decided: March 24, 2025

---

ERIC LAWRENCE KLEIN, Beveridge & Diamond P.C., Boston, MA, argued for plaintiffs-appellants. Also represented by EMMA DISMUKES; GUS BAUMAN, KAITLYN D. SHANNON, Washington, DC.

ANDREW MARSHALL BERNIE, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TODD KIM.

---

Before MOORE, *Chief Judge*, HUGHES and CUNNINGHAM, *Circuit Judges*.

MOORE, *Chief Judge*.

Michael Etchegoinberry, Erik Clausen, Barlow Family Farms, L.P., and Christopher Todd Allen, for themselves and on behalf of all others similarly situated (collectively, Appellants), appeal a decision of the United States Court of Federal Claims dismissing their Fifth Amendment takings claim for lack of subject matter jurisdiction under Rule of the United States Court of Federal Claims (RCFC) 12(h)(3). *Etchegoinberry v. United States*, 165 Fed. Cl. 696, 729 (2023) (*2023 Decision*). For the following reasons, we affirm.

## BACKGROUND

In 1960, Congress passed the San Luis Act to provide irrigation water for the San Luis Unit in the San Joaquin Valley of California. Pub. L. 86-488, 74 Stat. 156 (1960). Section 1(a) of the San Luis Act conditioned construction of the San Luis Unit on the United States "receiv[ing] satisfactory assurance from the State of California that it will make provision for a master drainage outlet and disposal channel . . . or has made provision for constructing the San Luis interceptor drain to the delta designed to meet the drainage requirements of the San Luis unit." *Id.* In 1962, the Secretary of the Interior reported to Congress that the Department of the Interior (DOI), through the Bureau of Reclamation (Reclamation), would construct the San Luis Drain. *Etchegoinberry v. United States*, 114 Fed. Cl. 437, 443 (2013) (*2013 Decision*).

Appellants own land in the Westlands Water District, a district within the San Luis Unit. In 1967, Reclamation began delivering water to the Westlands. J.A. 304. Construction of the San Luis Drain began in 1968 but was never completed due to environmental and economic

concerns. *See 2023 Decision* at 701–04. While Reclamation provided drainage for a small portion of the Westlands from 1976 to 1986, it is undisputed no drainage has occurred since then. *2013 Decision* at 447.

Litigation over the provision of drainage, or lack thereof, ensued and continues to this day. J.A. 308–325; *2023 Decision* at 704–10. On September 2, 2011, Appellants filed the instant case in the Court of Federal Claims alleging the United States took their property for public use without just compensation in violation of the Fifth Amendment. J.A. 2916. Specifically, Appellants alleged, because the United States did not provide the drainage it was obligated to provide, "the combined effect of the rising water table and the accumulation of saline groundwater beneath and upon their properties has deprived [Appellants] of the benefit of the productive use of their farmlands, and the value of their farmlands has been reduced." J.A. 2918. This resulted in an alleged taking of, at least, "flowage and seepage easements upon [Appellants'] lands." J.A. 2942.

The United States filed a motion to dismiss for lack of subject matter jurisdiction. *2013 Decision* at 473. The United States argued Appellants' claim was time-barred by the statute of limitations, which requires filing of claims such as this against the United States within six years of claim accrual. 28 U.S.C. § 2501. Appellants argued the stabilization doctrine should apply, and their claim did not stabilize, and therefore accrue, until at least 2008, making it timely.[1] *2013 Decision* at 478. The Court of Federal Claims agreed with Appellants that the stabilization doctrine applied and Appellants' claim did not accrue more

---

[1] Because Appellants filed the instant case on September 2, 2011, the critical date for statute of limitations purposes is September 2, 2005. *See* 28 U.S.C. § 2501.

than six years before the filing date, and denied the motion to dismiss. *Id.* at 498.

This case was then stayed for nearly seven years while the parties attempted settlement. *2023 Decision* at 708. In 2020, the stay was lifted and the United States filed a motion to dismiss for failure to state a claim under RCFC 12(b)(6). *Id.* During briefing for the motion, the judge on the case took senior status and the case was reassigned. J.A. 2969. In 2023, the Court of Federal Claims *sua sponte* dismissed the case for lack of subject matter jurisdiction under RCFC 12(h)(3), holding the stabilization doctrine did not apply and Appellants' claim was time-barred. *2023 Decision* at 700. Appellants appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I.    The Law-of-the-Case Doctrine

Appellants argue the Court of Federal Claims in 2023 (the 2023 court) abused its discretion by revisiting an issue already settled by the Court of Federal Claims in 2013 (the 2013 court). Appellants' Br. 11–27. We do not agree. We review whether a lower court erred in not applying the law-of-the-case doctrine for abuse of discretion. *Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power.").

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* at 618. The doctrine, however, "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). Courts can therefore revisit prior decisions, but they should exercise discretion in reopening matters already decided, absent extraordinary circumstances. *See id.*

The 2023 court did not abuse its discretion in revisiting the issue of subject matter jurisdiction. The court explained it did not concur with the 2013 decision that Appellants' complaint was filed within six years of the date the claim accrued. *2023 Decision* at 700. The court noted it must dismiss an action if, at any time, it determines subject matter jurisdiction is lacking, regardless of the law of the case. *Id.* at n.2 (citing RCFC 12(h)(3)). The court explained the law-of-the-case doctrine cannot trump the limitations of Tucker Act jurisdiction, the prior jurisdictional decision was in error, and continuing the litigation would result in manifest injustice. *Id.*

Appellants argue the 2023 court was not required by RCFC 12(h)(3) to determine subject matter jurisdiction under 28 U.S.C. § 2501 because that statute provides for statutory, not constitutional, jurisdiction, which does not need to be determined before addressing the merits of a case. Appellants' Br. 12. We do not agree. While some statutory requirements may not be "jurisdictional" such that they must be answered prior to addressing the merits of a dispute, *Minesen Co. v. McHugh*, 671 F.3d 1332, 1337 (Fed. Cir. 2012), the Supreme Court made clear the requirements of 28 U.S.C. § 2501 are unwaivable, "absolute," and correctly considered *sua sponte*, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008). Even accepting Appellants' argument that the 2023 court was not required to revisit whether Appellants satisfied 28 U.S.C. § 2501, it was not an abuse of discretion for the 2023 court to dismiss the case for lack of subject matter jurisdiction *sua sponte*.

Appellants argue the 2023 court did not establish "exceptional circumstances" to warrant revisiting the 2013 court's decision. Appellants' Br. 14. Appellants posit the law-of-the-case doctrine allows a court to revisit a decided issue only when there "(1) is new and material evidence; (2) the controlling law changed; or (3) the earlier decision is 'clearly erroneous and would lead to manifest injustice.'"

Appellants' Br. 17 (citing *McGuire v. United States*, 707 F.3d 1351, 1365 (Fed. Cir. 2013) (Reyna, J., concurring)). But the law-of-the-case doctrine is not so rigid. As the Supreme Court explained in *Christianson*, "[a] court has the power to revisit prior decisions of its own," but "courts should be loathe [sic] to do so in the absence of extraordinary circumstances *such as* where the initial decision was 'clearly erroneous and would work a manifest injustice.'" 486 U.S. at 817 (quoting *Arizona*, 460 U.S. at 618 n.8.) (emphasis added). It was not an abuse of discretion for the 2023 court to decide the law-of-the-case doctrine does not overcome the jurisdictional requirements of 28 U.S.C. § 2501 and RCFC 12(h)(3) and "continuing this litigation would work a manifest injustice on the parties." *2023 Decision* at 700 n.2. While the Court of Federal Claims should be loath to revisit settled issues, here, the 2023 court did not abuse its discretion in revisiting the 2013 court's decision.[2]

## II.  Subject Matter Jurisdiction

Appellants argue their takings claim is timely under the stabilization doctrine. Appellants' Br. 27–49. The United States argues the stabilization doctrine does not apply, but even if it did, the claim stabilized before the critical date of September 2, 2005. Resp. Br. 30–49. We agree with the United States. We review a decision by the Court of Federal Claims to dismiss a case for lack of subject matter

---

[2]    Moreover, an appellate court "is not bound by district court rulings under the law-of-the-case doctrine." *Musacchio v. United States*, 577 U.S. 237, 245 (2016). Our "function *is* to revisit matters decided in the trial court." *Id.* (emphasis in original). Even if the 2023 court had abused its discretion in revisiting the issue of subject matter jurisdiction, we would still have the power to review the issue on appeal.

jurisdiction de novo. *Diversified Grp. Inc. v. United States*, 841 F.3d 975, 980 (Fed. Cir. 2016).

Typically, a takings claim accrues when "all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis in original). The stabilization doctrine postpones accrual of a takings claim "until the situation becomes stabilized" and "consequences of inundation have so manifested themselves that a final account may be struck." *United States v. Dickinson*, 331 U.S. 745, 749 (1947). In such a case, a plaintiff's claim accrues, and he must bring suit for purposes of 28 U.S.C. § 2501, "once it is clear that the process has resulted in a permanent taking and the extent of the damage is reasonably foreseeable." *Boling v. United States*, 220 F.3d 1365, 1371 (Fed. Cir. 2000). Importantly, the stabilization doctrine applies to "irregular," *id.* at 1373, or "intermittent," *Dickinson*, 331 U.S. at 747, physical processes of which the permanent effect on the land is difficult to pinpoint.

The stabilization doctrine does not apply to Appellants' claim. Appellants alleged the taking as the "full productive use of their farmlands," by the United States through non-performance of its statutory duty to provide drainage. *E.g.*, J.A. 2942. This is not a flooding case like *Dickinson*, where the government constructed a dam, resulting in a "continuing process of physical events" that eroded the plaintiffs' land over time. 331 U.S. at 749. Appellants here irrigated their land for over forty years knowing the United States had not provided any drainage.[3] The lack of drainage did

---

[3]    This case has consistently been argued as a single taking—failure to provide drainage stemming from at least 1986. We leave open the question of whether there exists

not change at any point in this time period. As the Court of Federal Claims suggested, "the provision of irrigation water was regular, consistent, and recurring, and not a slow, gradual, physical process that may (or may not) eventually lead to a taking." *2023 Decision* at 714.

Appellants also argue the stabilization doctrine applies because the *harm* to their land is irregular or intermittent. *See, e.g.*, Appellants' Br. 33. We do not agree. The uncontested fact is: Appellants have applied fresh water to their lands without the United States providing any drainage since at least 1986. J.A. 2931. Appellants knew this resulted in regular damage to their land. *2013 Decision* at 441–42 ("The parties have stipulated that when fresh water is brought in to irrigate an agricultural area, salty water, which remains after crops have been irrigated, must be carried back out in order to avoid a build-up of salt in the soil."); *see also* J.A. 2942 (accumulation of saline groundwater beneath and upon Appellants' properties is "inevitably recurring," an "inevitable consequence," and "the direct and foreseeable result"). In fact, some Appellants alleged over thirty years ago their land was "rendered barren by excess salt." *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715, 722 (E.D. Cal. 1993); Resp. Br. 35. It cannot be the case that Appellants' land was barren in 1992, but the harm was irregular and intermittent until after 2005.

Relying on *Applegate v. United States*, 25 F.3d 1597, 1583 (Fed. Cir. 1994), Appellants argue the stabilization doctrine applies because they were reasonably uncertain of

---

a scenario more akin to flooding for which multiple takings, each with a separate statute of limitations, could exist, because Appellants have made clear this is not their claim. *See, e.g.*, Oral Arg. at 11:45, 13:30 (*available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-2196_02042025.mp3).

the permanence of the damage to their land due to the United States' promises of future mitigation. Appellants' Br. 34–45. In *Applegate,* the government constructed two jetties that led to a slow, gradual erosion of plaintiffs' land. 25 F.3d at 1580. The gradual nature of the erosion, combined with the government's efforts to replace the sand, led plaintiffs to be uncertain "if their land would be permanently destroyed." *Id.* at 1582. But here, any potential plans for drainage by the United States did not obviate Appellants' obligation to bring a timely claim regarding their land. *See 2023* Decision at 714 ("Yes, there was for some period uncertainty about whether drainage facilities would be built . . . but the alleged physical occupation here is not the failure to build drainage facilities—it is the flowage or seepage easement that resulted from that failure."). The provision of irrigation water was known and regular, unlike the gradual erosion of plaintiffs' land in *Applegate*. If Appellants were right that the accrual of any takings claim could be postponed through the government's promises of mitigation, there would be an "unending conflict with the statute of limitations." *Gustine Land & Cattle Co. v. United States,* 174 Ct. Cl. 556, 656 (1966).

Moreover, even if the stabilization doctrine did apply due to the United States' promises to provide drainage, Appellants' claim stabilized before the critical date of September 2, 2005. It is Appellants' burden to show they were justifiably uncertain about the permanence of the taking until at least September 2, 2005. *Diversified*, 841 F.3d at 980. Appellants argue they were justifiably uncertain about the permanence of the taking due to the United States' promises to provide drainage, such that their claim did not stabilize until 2010. Appellants' Br. 34–45. For example, in 1986, the United States stipulated to a judgment in a different litigation "pledging to complete a drainage plan by 1991." *2013 Decision* at 488; J.A. 308. In 1989, Reclamation formed the San Luis Unit Drainage Program "to identify and implement an agricultural drainage plan

for the San Luis Unit." *2013 Decision* at 489; J.A. 309. In 1995, a district court ruled the San Luis Act established a statutory duty to provide drainage, J.A. 313, which the Ninth Circuit affirmed in 2000, *Firebaugh Canal Co. v. United States*, 203 F.3d 568, 578 (9th Cir. 2000). In 2007, Reclamation issued a Record of Decision proposing two alternatives for federal provision of drainage services. J.A. 319; J.A. 724–64. In light of these events, Appellants argue it was not until Reclamation sent a letter to Senator Dianne Feinstein in 2010 suggesting responsibility for a long-term drainage solution should be shifted to the water districts that Appellants should have realized the taking was permanent and their claim had stabilized. *2013 Decision* at 494; J.A. 2201–05.

Appellants' arguments do not rise to the level of justifiable uncertainty about the permanence of the taking preventing accrual of their claim until September 2, 2005. While the United States may have conducted studies and issued reports regarding the feasibility of potential drainage construction, actions taken by the United States should have alerted Appellants as to the permanence of their claim before September 2, 2005. For example, Congress repeatedly passed appropriations riders "prohibiting selection of a final point of discharge for the San Luis interceptor drain until certain conditions were met," which Appellants do not allege have been met to this day. *2023 Decision* at 723. In the early 1990s, the United States publicly "denied that any statutory duty exists to provide drainage." *Sumner Peck*, 823 F. Supp. at 748. And, tellingly, some Appellants brought a similar, if not this exact, claim over thirty years ago. *Id.* at 722; Resp. Br. 35. While a close call, these events, along with others recounted in more detail by the 2023 court, show Appellants were not justifiably uncertain about the permanence of the alleged taking before the critical date of September 2, 2005. *See generally 2023 Decision* at 722–29.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. The Court of Federal Claims did not abuse its discretion in *sua sponte* revisiting subject matter jurisdiction. The stabilization doctrine does not apply to Appellants' alleged takings claim and, even if it did, Appellants' claim accrued before September 2, 2005. We affirm the Court of Federal Claims' dismissal for lack of subject matter jurisdiction.

**AFFIRMED**