# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of --                  )
                                    )
Sungwoo E&C Co., Ltd.           )      ASBCA Nos. 61144, 61219
                                      )
Under Contract Nos. W91QVN-14-D-0034 )
                     W91QVN-12-D-0114 )
                     W91QVN-12-D-0119 )
                     W91QVN-12-D-0130 )
                     W91QVN-12-D-0132 )
                     W91QVN-13-D-0064 )

APPEARANCE FOR THE APPELLANT:      Song Yong Eui., Esq.
                                            Central IP & Law
                                            Seoul, Korea

APPEARANCES FOR THE GOVERNMENT:      Raymond M. Saunders, Esq.
                                            Army Chief Trial Attorney
                                            Dana J. Chase, Esq.
                                            MAJ Bruce H. Robinson, JA
                                            MAJ Stephen P. Smith, JA
                                            Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCNULTY

Before us are the government's motions to strike and a motion to partially dismiss for lack of jurisdiction in the above referenced appeals.[1] The government moves to strike portions of appellant's complaints, contending we lack jurisdiction

---

[1] The government has filed four motions to strike. The first, filed in ASBCA No. 61144 on June 12, 2017, related to appellant's initial complaint in that appeal. The second, also filed in ASBCA No. 61144 on August 25, 2017, relates to appellant's amended complaint in that appeal. It reiterated the arguments made in the first motion and does not differ materially from the first motion. We view it as superseding the original motion. The third motion was filed in ASBCA No. 61219, on August 29, 2017. The final motion to strike was filed as part of the government's briefing, requested by the Board to address a jurisdictional issue. This final motion also includes a motion to partially dismiss for lack of jurisdiction. Although not currently consolidated, the appeals are interrelated, sharing common or overlapping factual assertions and arguments, and the motions are best decided in a single decision.

over some of the causes of action, one cause of action is duplicative and another is moot.

## FINDINGS OF FACT FOR PURPOSES OF THE MOTIONS

1. The appeals arise from several task orders awarded to appellant for work performed in the Republic of Korea (ROK). The initial task orders were issued pursuant to a general construction, multiple award, indefinite delivery/indefinite quantity (IDIQ) task order contract appellant received, Contract No. W91QVN-14-D-0034 (MATOC). (ASBCA No. 61219 (61219) R4, tab 17 at 1, 10) The Multiple Award Task Order Contract (MATOC) was signed by a U.S. contracting officer (CO) (*id.* at 1). The MATOC performance period was 12 months from August 14, 2014 through August 13, 2015, renewable at the option of the government for two additional 12-month periods (*id.* at 10). The awardees were promised they would be given fair opportunity to compete for additional awards in accordance with Federal Acquisition Regulation (FAR) 16.505, ORDERS UNDER MULTIPLE AWARD CONTRACTS FAIR OPPORTUNITY (*id.* at 27).

2. Appellant, a Korean company, was awarded eleven task orders under the MATOC (61219 app. supp. R4, tab 39 at 1). Only three of the task orders, 0001, 0002, 0004 are at issue in the appeals (61219 R4, tab 27 at 17). These orders were signed by a CO (61219 app. supp. R4, tabs 29-31 at 1).

3. Appellant also was awarded other IDIQ contracts: Contract Nos. W91QVN-12-D-0114, W91QVN-12-D-0119, W91QVN-12-D-0130, W91QVN-12-D-0132, W91QVN-13-D-0064 and task orders issued thereunder for paving and other work[2] (ASBCA No. 61219 R4, tabs 11, 13-16). The paving work contracts also included the promise of fair opportunity to compete for additional awards and options to renew the contracts, but for four additional 12-month performance periods (61219 R4, tabs 11, 13-16 at 5-8, 16). The paving contracts were signed by a U.S. CO (*id.* at 2). The record does not include the task orders issued under the paving contracts.

4. In addition to the contracts and task orders awarded to appellant, appellant asserts it was the lowest offeror on three other solicitations, but was not awarded any of them (61219 R4, tab 27 at 1-2).

---

[2] Also multiple award task order contracts. To reduce potential confusion we will refer to the task orders issued under these contracts as the "paving work" contracts or task orders.

5. The MATOC included the following pertinent contract clauses:

5152.232-4030 PAYMENTS – ROK MND – FUNDED CONTRACTS:

> (a) Responsibility for Payment: Pursuant to Memorandum of Agreement (MOA) between United States Forces Korea (USFK) and the Republic of Korea Ministry of National Defense (ROK MND) concerning this contract, the ROK Government shall make payment directly to the contractor for performance rendered and accepted under any contract part, or delivery or service order identified as "MOA contract, funded by ROK MND." If the contract or any part of the contract is identified as obligating U.S. appropriated funds, the U.S. Government shall pay for that portion, pursuant to and IAW procedures stated by FAR 52.232-1 PAYMENTS (APR 1984). Payments shall be made at the prices specified in the schedule.

> . . . .

5152.232-4028 FUNDING OF ROK FUNDED CONTRACTS:

> (a) Funding advisement: Except for contractual instruments, if any, which specifically obligate U.S. appropriated funds for payment by the U.S. Government, this contract, any modifications (including exercise of option(s)) to it, and any delivery orders under it, shall cite "MOA Contract - funded by ROK MND," in lieu of citing appropriations and accounting data.

> (b) Limitation of US liability: The U.S. Government shall incur no liability, and no appropriated funds of the United States shall be obligated, for payment for services, supplies, claims, or other costs arising out of or under contracts, delivery or service orders, or exercises of options or other modifications that are designated as "MOA Contract - funded by ROK MND."

> . . . .

5152.233-4008, DISPUTES, MINISTRY OF NATIONAL DEFENSE FUNDED CONTRACTS, ROK:

(This clause applies only to ROK-funded acquisitions or parts of acquisitions.)

(a) All disputes arising under, or relating to, this contract shall be resolved under this clause.

(b) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim than can be resolved under a contract clause that provides for the relief sought by the claimant; however, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the clause until certified as required by subparagraph (d)(2) below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the clause. The submission may be converted to a claim under the clause, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(c) The contractor shall have the right to submit to the Contracting Officer, disputes, demands, and/or claims, relating to or arising under this contract, only on the issue of whether the Government should and will certify performance, for payment by the ROK Government. The contractor shall not submit to the U.S. Government, nor will the Contracting Officer accept, any disputes, demands, or claims for compensation for work, which the U.S. Government has certified as completed.

(d) Procedures

(1) A claim by the contractor shall be made in writing and submitted to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a decision by the Contracting Officer.

(2) For contractor's claims exceeding $100,000, the contractor shall submit with the claim a certification that –

(i) The claim is made in good faith;

(ii) Supporting data are accurate and complete to the best of the contractor's knowledge and belief; and

(iii) The amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

(3) Individuals

(i) If the contractor is an individual, the certification shall be executed by that individual.

(ii) If the contractor is not an individual, the certification shall be executed by –

(A) A senior company official in charge at the contractor's plant or location involved; or

(B) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

(e) For contractor's claims of $100,000 or less, the Contracting Officer will, if requested in writing by the contractor, render a decision within 60 days of the request. For contractor-certified claims over $100,000, the Contracting Officer will, within 60 days, decide the claim or notify the contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the contractor appeals the decision within 30 days of the Contracting Officer's decision, to the Principal Assistant Responsible for Contracting (PARC). In the event that the contractor does appeal the decision of the Contracting Officer, the appeal shall be heard by and decided by the PARC and/or a panel of U.S. officials, chaired by the PARC. The decision of this panel shall be final.

(g) The contractor shall proceed diligently with performance of this contract, pending final resolution of any request for

relief, claim, or action arising under the contract, and comply with any decision of the Contracting Officer.

(h) Regarding "MOA Contract Funded by ROK MND" portion or period of this contract, any reference to the Disputes clause, FAR 52.233-1, shall be construed to mean this local clause 5152.233-4008.

(61219 R4, tab 17 at 25, 37-40) The paving contracts also included these provisions (61219 R4, tab 11 at 27-28, 34, 36; tab 13-16 at 21-23, 27-30).

6. The MATOC contemplated that task orders awarded to Sungwoo might be funded by the ROK MND or by the United States with appropriated funds (61219 R4, tab 17 at 26).

7. The record includes three task orders issued under the MATOC (ASBCA No. 61144 (61144) R4, tabs 3-5). All three indicate payment would be made by the ROK MND without appropriated United States funds (61144 R4, tab 3 at 1-2, 12; tab 4 at 1, 11; tab 5 at 1, 9). Two of the task orders also expressly state that they are "LCS projects"[3] funded in accordance with a memorandum of agreement between the United States and the ROK (61144 R4, tab 3 at 12; tab 5 at 9).[4] The other MATOC task order states that it is a ROK MND funded memorandum of agreement contract (61144 R4, tab 4 at 11).

8. The MATOC was issued pursuant to the 1953 Mutual Defense Treaty between the United States and ROK and a number of agreements relating thereto (*see, e.g.,* 61219 R4, tab 17 at 25; ASBCA Nos. 61144, 61219, gov't mot., ex. G1 at 4). In 1967 the United States and ROK entered into a Status of Forces Agreement (SOFA), which includes the following pertinent provisions in Article V:

Facilities and Areas – Cost and Maintenance

1. It is agreed that the United States will bear for the duration of this Agreement without cost to the Republic of Korea all expenditures incident to the maintenance of the United States armed forces in the Republic of Korea, except those to be borne by the Republic of Korea as provided in paragraph 2.

---

[3] LCS project will be discussed below.
[4] LCS involve cost sharing between the United States and the Republic of Korea. They are either Labor Cost Sharing or Logistics Cost Sharing (findings 10-11).

6

2. It is agreed that the Republic of Korea will furnish for the duration of this Agreement without cost to the United States and make compensation where appropriate to the owners and suppliers thereof all facilities and areas and rights of way, including facilities and areas jointly used, such as those at airfields and ports as provided in articles II and III. The Government of the Republic of Korea assures the use of such facilities and areas to the Government of the United States and will hold the Government of the United States as well as its agencies and employees harmless .from [sic] any third party claims which may be advanced in connection with such use.

(ASBCA Nos. 61144, 61219, gov't mot., ex. G-1 at 7)

9. The United States and ROK have entered into a number of Special Measures Agreements (SMA) to implement Article V of the SOFA. The 9th SMA covers the period in which the MATOC and the paving contracts were awarded and performed. (ASBCA Nos. 61144, 61219, gov't mot., ex. G-2 at 1, 3-6)

10. Article 1 of the 9th SMA states:

The Republic of Korea shall bear, for the duration of this Agreement, as a special measure relating to Article V of the Status of Forces Agreement, a part of the expenditures associated with the stationing of the United States Armed Forces in the Republic of Korea. The contribution of the Republic of Korea shall be categorized into Labor Cost Sharing, Logistics Cost Sharing and Republic of Korea Funded Construction (ROKFC). Implementation of this Agreement shall be in accordance with a separate implementation arrangement between the concerned authorities of the Parties.

The Parties shall put in utmost efforts to enhance accountability and transparency for implementation of this Agreement. In this regard, the Exchange of Notes on System Improvements shall be adopted and enter into force at the same date as this agreement.

(*Id.* at 5)

7

11. The United States and ROK entered into an Implementing Agreement concerning Logistics Cost Sharing (LCS) for 2009 through 2013 in October 2009 (ASBCA Nos. 61144, 61219, gov't mot., ex. G-3 at 1, 9). The purpose of the Implementing Agreement was stated to be; "[t]o define the responsibilities of the parties in the execution of the LCS program" (*id*. at 2). These responsibilities are set forth in Article III-Mutual Responsibilities Of The Parties, which states in pertinent part:

> 2. ROK MND delegates to USFK the authority to solicit for its requirements within Categories and Scope of the LCS program, negotiate, and prepare the contract drafts(s). USFK will submit the contract draft(s) and the contractor submitted Local Clause 5152.204-4032 Representation and Certifications to include the bid advertisement to ROK MND for the approval of obligating ROK funds. ROK MND also delegates to USFK the sole authority to issue delivery orders, to inspect and accept equipment, supplies, and services, and to determine the contractor's entitlement to payment under the contract. ROK MND retains authority to review and suggest modifications to contract draft(s), and final approval authority for ROK funded contract(s) after US obligation of any US funds or US government furnished property. USFK retains authority to sign and join in award of those contracts that obligate US funds or US government furnished property.
>
> 3. The parties agree that all contractors shall submit billing invoices directly to USFK for certification, USFK shall forward the certified billing invoices to ROK MND Logistics Management Bureau for payment, and ROK MND shall pay the Korean contractors directly.
>
> . . . .
>
> 4. The parties agree that all LCS work must be accomplished in the ROK or its territorial waters and that all equipment and supplies that are to be acquired with ROKG funds shall be manufactured in the ROK, and that all LCS service work shall be carried out by

8

Korean contractor(s), Korea Railroad Corporation, or
the ROK military.

(*Id.* at 2-3)

12. Appellant's performance with respect to schedule on three of the MATOC task orders was rated as unsatisfactory in the government's Contractor Performance Assessment Reporting System (CPARS) (61219 R4, tabs 3-5).

13. Appellant disputes the government's evaluation of its performance. (61219 R4, tab 27 at 4, 14, 19-20; ASBCA No. 61219, compl. ¶¶ 12-14; ASBCA No. 61144, amend. compl. first ¶¶ 1-4). Appellant alleges the government engaged in fraudulent acts, including requiring contractors to forge documents and that the government retaliated against appellant, when it refused to participate in the alleged scheme, by (1) giving it "unsatisfactory" CPARS ratings and (2) by imposing a defacto suspension or debarment when the government refused to exercise options under the MATOC and paving work contracts and award additional work to appellant (ASBCA No. 61114, amend. compl. ¶¶ 129-43; ASBCA No. 61219, compl. ¶¶ 12, 16, 17).

14. Appellant's claim asserts the government wrongfully failed to award contracts under Solicitation Nos. W91QVN-16-R-0091 and W91QVN-16-R-0119[5], and to exercise options under the MATOC and Contract Nos. W91QVN-13-D-0064, W91QVN-12-D-0114, W91QVN-12-D-0119, W91QVN-12-D-0130 (61219, R4, tab 27 at 2).

15. Appellant seeks relief in ASBCA No. 61144 in the form of an order directing the government to change the CPARS ratings from "unsatisfactory" to "satisfactory" and in ASBCA No. 61219, by payment of damages in the amount of KRW2,050,656,763[6] for the failure to award its contracts and exercise options (ASBCA No. 61144, amend. compl. first ¶ 2; ASBCA No. 61219, compl. first ¶ 1). Included in the total amount claimed in ASBCA No. 61219 is KRW1,000,000,000, described as "punitive damages" (ASBCA No. 61219, compl. ¶ 18).

---

[5] The solicitations indicate that they are for task orders to be issued to awardees under many contracts (61219 R4, tabs 6, 9 at 1). Other than the MATOC, these contracts are not in the record.

[6] South Korea currency, the Won.

9

16. The specific damages in KRW, other than the "punitive damages," asserted in ASBCA No. 61219 are set forth in the table below:

| Contract/Solicitation No. | Complaint Paragraph | Lost Profits | Bid Prep. Costs | Total Damages Asserted |
|---|---|---|---|---|
| W91QVN-16-R-0008 | Second ¶ 1 | 90,664,095 | 5,000,000 | 95,664,095 |
| W91QVN-16-R-0091 | Second ¶ 2 | 111,032,048 | 5,000,000 | 116,032,048 |
| W91QVN-16-R-0119 | ¶ 3 | 93,001,648 | 5,000,000 | 98,001,648 |
| W91QVN-13-D-0064 | ¶¶ 4-5 | 62,517,650 | | 62,517,650 |
| W91QVN-12-D-0114 W91QVN-12-D-0119 W91QVN-12-D-0130 W91QVN-12-D-0132 | ¶¶ 6-8 | 216,056,967 | | 216,056,967 |
| W91QVN-14-D-0034[7] | ¶¶ 6, 9-10 | 390,961,678 | | 390,961,678 |
| W91QVN-14-D-0034[8] | ¶KRW 11 | 33,850,412 | | 33,850,412 |
| Total | | | | 1,013,084,498[9] |

Solicitation Nos. W91QVN-16-R-0008, W91QVN-16-R-0091 and W91QVN-16-R-0119 are the three solicitations for which appellant asserts it was the lowest offeror, but received no award (finding 4).

## DECISION

*Parties' Contentions*

The government asserts appellant has raised six distinct causes of action in ASBCA No. 61219: one count challenging the June 2, 2016 MATOC CPARS evaluation, three counts challenging the failure to award task orders, one count challenging a stop work order, two counts alleging the Army committed fraud, one count

---

[7] The MATOC (finding 1).

[8] The MATOC (finding 1).

[9] The "punitive" damages of KRW1,000,000 added to this figure is KRW37,572,265 less than the total amount, KRW2,050,656,763, asserted in the complaint. This discrepancy is not explained in either the claim or the complaint.

10

alleging the Army suspended or debarred appellant, and six counts challenging the decision to not exercise options. The government moves to strike all but the last of these causes of actions. Additionally, the government moves to strike appellant's punitive damages claim. (ASBCA No. 61219, gov't mot. at 12) The government asserts we lack jurisdiction under the Contract Disputes Act, (CDA) 41 U.S.C. §§ 7101-7109 to consider appellant's claims relating to the MATOC, arguing it was not a contract entered into by an executive agency of the United States because it was funded by the ROK. The government argues we lack subject matter jurisdiction to consider ASBCA No. 61144 for the same reason. (ASBCA Nos. 61144, 61219, gov't mot. at 1) The government makes additional arguments as will be set forth below. Appellant argues we have jurisdiction because the contracts were entered into by the Army, an executive agency of the United States, which as discussed below, we find persuasive. Appellant makes other arguments, set forth in greater detail below, which we find to be non-persuasive.

*Jurisdictional Finding*

The appeals and the government's motions raise several issues. First, we address whether any of appellant's contracts are procurements under the CDA, (41 U.S.C. §§ 7101-7109), for which we have subject matter jurisdiction. The CDA applies to contracts entered into by an executive agency as follows:

> **(a) Executive agency contracts.**--Unless otherwise specifically provided in this chapter, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of title 28) made by an executive agency for—
>
> **(1)** the procurement of property, other than real property in being;
> **(2)** the procurement of services;
> **(3)** the procurement of construction, alteration, repair, or maintenance of real property; or
> **(4)** the disposal of personal property.

41 U.S.C. § 7102.

The CDA establishes our jurisdiction in §7105 as follows:

> **(e) Jurisdiction.--**
> **(1) In general.--**
> **(A) Armed Services Board.**--The Armed Services Board has jurisdiction to decide any appeal from a decision of a contracting officer of the Department of Defense, the Department of the Army, the Department of the Navy, the Department of the Air Force, or the

11

National Aeronautics and Space Administration relative to a contract made by that department or agency.

Here there is no dispute that all of the contracts involved are for construction services, which is a type of contract over which we have subject matter jurisdiction. Next, we determine whether the contracts and task orders were entered into by an executive agency. Appellant argues jurisdiction exists under the CDA because all of the contracts were signed by a United States contracting officer on behalf of the United States Army (ASBCA Nos. 61144, 61219, app. resp. at 2-5). The government argues that, although executed by an Army contracting officer, because the MATOC task orders are funded by the ROK they were not entered into by an executive agency of the United States. In support of this argument the government relies on the SOFA between the ROK and the United States and the SMA entered into thereunder. Beginning with the SMA in 1991, the parties revised the SOFA, changing the original provision set forth in Article V, which required the United States to bear all expenditures incident to the maintenance of United States Armed Forces in the ROK, to a cost sharing system, by which the ROK bears some of the costs associated with maintaining United States Armed Forces in Korea. (Findings 8-10) The government has focused on language in the 9th SMA, the one applicable to the period of contract performance, which suggests the Army entered into the task orders as an agent for the ROK. In this regard the government has emphasized the language in the SMA and an Implementing Agreement delegating the ROK's authority to the Army and the ROK's retention of final approval authority for the contracts it funds. (Findings 10-11) It is true the ROK could be found to be the contracting authority, or party to the contract, if the Army was acting as a mere agent for it.[10] The record does not support finding the Army was acting as an agent of the ROK. Instead, the record supports finding the work was performed to directly benefit the United States Armed Forces' mission in Korea and that ROK's involvement was to partially absorb the cost of this mission. This is made clear in the record in several ways. In Article I of the SMA, the parties agreed "The Republic of Korea shall bear for the duration of this Agreement, as a special measure relating to Article V of the SOFA, a part of the expenditures associated with the stationing of the United States Armed Forces in the Republic of Korea." (ASBCA No. 61144, gov't mot., ex. G-2 at 5) The Implementation Agreement and the Notes thereto, implementing the SMA indicate that it is the United States government, which selects the projects to be funded by the ROK (id. at 16-18). In the case of construction projects, the United States selects and prioritizes the

---

[10] "When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and the third party agree otherwise." RESTATEMENT (THIRD) OF AGENCY § 6.01 (2006). A principal is disclosed when the third party has notice that an agent is acting for a principal and has notice of the principal's identity." Id. at § 1.04 (2).

12

projects based on military needs, is responsible for their design and selects the contractors (*id.* at 30-31, 34-35). In the case of contracts for equipment, supplies and services funded by the ROK pursuant to the LCS program, the parties have agreed expressly that these are acquired for the official use of United States Forces Korea (ASBCA No. 61144, gov't mot., ex. G-3 at 2). The LCS program includes construction services needed to maintain facilities on United States installations (*id.* at 8). The MATOC and the LCS task orders issued under it also state that the work performed is for the benefit of the United States (61219 R4, tab 17 at 11; app. supp. R4, tab 29 at 5 (improvements to Building 2253 at Camp Stanley); tab 30 at 4-5 (repairs to Buildings 1251 and 1256 (dining facilities) at RLFC (Rodriguez Live Fire Complex); tab 31 at 4 (repairs to Building 247 at Camp Red Cloud)).

As a result of the CDAs use of the term "procurement" in its definition of executive agency contract, whether a contract is for something that directly benefits the United States is an important factor in determining whether a contract falls within the statute. *See Wesleyan Co., Inc. v. Harvey*, 454 F. 3d 1375, 1378 (Fed. Cir. 2006) (defining "procurement," as that term is used in the CDA, as the "acquisition by purchase, lease or barter, of property or services for the *direct benefit or use* of the Federal Government)." (Emphasis in original); *see also Latifi Shagiwall Constr. Co.*, ASBCA No. 58872, 15-1 BCA ¶ 35,937 at 175,633 (agreement by the United States to purchase property or services using U.S. appropriated funds, but for the direct benefit of a party other than the United States is not a procurement contract). The *Latifi* opinion, together with the Federal Circuit's decision in *Wesleyan*, makes it clear that it is not the source of funding that determines whether a contract falls within the CDA; instead the determining factor is whether the United States directly benefits from the procurement. *See also, Slattery v. United States*, 635 F.3d 1298, 1301 (Fed. Cir. 2011) (*en banc*) (involving similar jurisdictional issue under the Tucker Act, 28 U.S.C. § 1491 contract funded with non-appropriated funds found to fit within the Tucker Act because the contract directly benefited the United States).

Similarly, the paving contracts also are for the direct benefit of the United States and thus constitute CDA contracts (61219 R4, tab 11 at 10 (repair and upgrade of general building USAG-RC, Casey/Area I); tabs 13-16 each at 1 (repair and construction of asphalt concrete pavements for Area I, II, IV, Kunsan Air Base (AB), Osan AB and Co-located Operating Bases (COBs) (Suwon, Daegu, Gwangju, Gimhae AB and Wonju Air Station)); tab 17 at 3 (contractor to provide all labor, tools, equipment, supplies, and any other resources necessary to upgrade USFK facilities (Including New Construction Work under $750,000.00) located in the Republic of Korea).[11]

---

[11] The record does not include any of the task orders issued to appellant under the paving contracts, which presumably, would more specifically describe the work that was performed.

The presence of a Disputes clause in the contract providing a dispute resolution process other than what is provided under the CDA does not divest the Board of its jurisdiction. *Binladin Organization, Almihdar Binladin Development Co., Ltd. & Amoumi Development Co., Ltd. (JV)*, ENG BCA No. 5304, 89-3 BCA ¶ 22,188 at 111,639. *See also OSHCO-PAE-SOMC v. United States*, 16 Cl. Ct. 614 (1989); *Burnside-Ott Aviation Training Center v. Dalton*, 107 F.3d 854 at 858 (Fed. Cir. 1997); *Minesen Co. v. McHugh*, 671 F.3d 1332, 1340-41 (Fed. Cir. 2012). Accordingly, we have general subject matter jurisdiction to consider the claims.

The government also argues we lack subject matter jurisdiction over appellant's ROK funded contracts under our charter. Having ruled we have jurisdiction under the CDA we need not address this issue.

*CPARS Finding*

The government further argues we lack subject matter jurisdiction to consider the claims relating to appellant's performance evaluations and the government's decision to not exercise options and award additional work due to appellant's fraud assertions (ASBCA No. 61219, gov't mot.). The government is correct when it argues that we do not have jurisdiction to consider allegations of fraud and make rulings thereon. *United Technologies Corp.*, ASBCA No. 46880 *et al.*, 95-2 BCA ¶ 27,698 at 138,079, n.1. But we do not agree with the government's characterization of appellant's complaints and we do not agree that we are required to strike the portions of the complaints that include allegations of fraud. Despite the frequent use of the word "fraud" in the complaints, we view appellant's appeals as making one central assertion, that the government acted arbitrarily and capriciously, or in bad faith, when it evaluated appellant's performance as being "unsatisfactory" and when it refused to exercise the options and award appellant additional work under the various contracts. We view the allegations regarding the falsification of documents and the other allegations of fraud potentially to be supportive of this central claim, should appellant be able to substantiate them. The Supreme Court has stated that leniency should be associated with notice pleading and that pleadings should be construed to facilitate a proper decision on the merits. *Conley v. Gibson*, 355 U.S. 41, 47-48, (1957). We do have jurisdiction to consider and rule on whether the government's performance evaluations and decision to not exercise the options were arbitrary and capricious actions or undertaken in bad faith. *Metag Insaat Ticaret A.S.*, ASBCA No. 58616, 13 BCA ¶ 35,454 at 173,862 (performance evaluation system requires fair, accurate and objective evaluation); *Attenuation Envtl. Co. v. NRC*, CBCA Nos 4920, 5093, 16-1 BCA ¶ 36,521 at 177,916-17 (involving claim that the government refused to exercise an option in retaliation, but finding bad faith was not proved). Keeping with *Conley*, we construe appellant's pleadings to allege bad faith and arbitrary and capricious actions on the part of the government with respect to the performance evaluations and

14

the refusal to exercise the options and deny the government's motions in this regard. Accordingly, we decline to strike appellant's allegations as requested and partially deny the government's motion.

## *Punitive Damages Finding*

The government also moves to strike appellant's punitive damages claim, arguing we lack jurisdiction to award punitive damages (ASBCA No. 61219 gov't mot. at 1, 20). We do not have authority to award punitive damages. (*Consolidated Defense Corp.*, ASBCA No. 52315, 03-1 BCA ¶ 32,099 at 158,668). Sungwoo's "Punitive Damage" claim narrative states specifically in pertinent part: "Sungwoo has been incurring loss and damage due to the government's improper actions. Therefore, Sungwoo is hereby making a claim for one billion (1,000,000,000) won as a punitive damage." (61219 R4, tab 27 at 4) The claim provides no further detail setting forth how this figure was derived. This allegation is repeated, essentially verbatim in appellant's complaint. (ASBCA No. 61219, complaint ¶ 18) In its response to the government's motion to strike, appellant argues the motion should be denied and that it be permitted to conduct discovery to develop facts needed to prove its allegations the government engaged in fraud and forgery (ASBCA No. 61219 app. resp. at 4). Appellant made no other effort to address the government's argument against its punitive damages claim. Even assuming appellant's allegations are true, they have no effect on the Board's ability to award punitive damages. In order to avoid dismissal it was incumbent upon appellant to provide evidence the damages it seeks had been mis-labeled as "punitive." Appellant has failed to do so. Accordingly, we find the government's argument against appellant's "punitive" damages claim in ASBCA No. 61219, persuasive and also partially grant the government's motion in this respect.

## *Suspension and Debarment Finding*

The government also moves to strike appellant's allegations relating to its assertions that it has been suspended or debarred. We view appellant's allegations regarding the government's failure to award its contracts as assertions that the government breached an implied contract to consider its bids fairly and honestly. Appellant argues its allegations do not raise a jurisdictional issue, but provides nothing more than this unsupported assertion to bolster its argument. (ASBCA No. 61219, app. resp. at 3) These allegations are in the nature of a bid protest, which we have previously held we do not have jurisdiction to consider. *Ammon Circuits Research*, ASBCA No. 50885, 97-2 BCA ¶ 29,318 at 145,786 (citing RC 27th Avenue Corp., ASBCA No. 49176, 97-1 BCA ¶ 28,658 at 143,151. *See also Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed. Cir. 1983); *Dreadnought Marine, Inc.*, ASBCA No. 45055, 95-2 BCA ¶ 27,650 at 137,825. Accordingly, we grant the government's motion with respect to the suspension and disbarment allegation, and strike these

15

assertions; specifically the second set of paragraphs numbered one through three of the complaint in ASBCA No. 61219.

The government is also correct that we do not have jurisdiction to consider appeals from suspension or debarment orders, whether actual or *de facto*. *Henry Stranahan*, ASBCA No. 58392, 13 BCA ¶ 35,312 at 173,356 (citing *Inter-Continental Equip., Inc.* ASBCA No. 38444, 90-1 BCA ¶ 22,501 at 112,956); *Sermor, Inc.*, ASBCA Nos. 32824 *et al.*, 94-1 BCA ¶ 26,301 at 130,822. Although appellant asserts it has been suspended or debarred in its amended complaint in ASBCA No. 61144, importantly, it does not seek relief in a form that would require that we make a determination that appellant was suspended or debarred, or direct the government to rescind any such order. Instead, as was the case with appellant's allegations relating to fraud, we view the allegations relating to suspension and debarment to be part of appellant's central assertion that the government acted arbitrarily and capriciously, circumstances potentially supporting with respect to the CPARS and failure to exercise option claims that we do have jurisdiction to consider. Accordingly, we also deny the government's motion with respect to the allegations relating to suspension and debarment.

The government also moves to strike the allegations challenging the government's decision to issue a stop work order relating to one of the task orders. The government argues the issue is moot, having been settled by the parties as part of the negotiations following the filing and dismissal of two earlier appeals by appellant, ASBCA Nos. 60855 and 60985. (ASBCA No. 61219, gov't mot. at 15-16) Appellant agrees the dispute has been resolved (ASBCA No. 61219, app. resp. at 3). Accordingly, we partially grant the government's motion and strike the allegations relating to the stop work order because the settlement renders the issue moot. *See Shiloh Services, Inc.*, ASBCA No. 61134, 18-1 BCA ¶ 37,117 at 180,662.

*Duplication Finding*

Finally, the government moves to strike the allegations regarding the evaluation of appellant's performance in ASBCA No. 61219, arguing they are duplicative of the allegations made in ASBCA No. 61144. Appellant argues the allegations are not duplicative (ASBCA No. 61219, app. resp. at 2). We agree appellant's allegations in the two appeals are duplicative with regard to the government's evaluation of its performance and grant the government's motion in this respect. *See CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,817.

16

## CONCLUSION

For the reasons stated above the government's motions are partially granted and partially denied. Although the MATOC contract and the delivery orders issued thereunder do not involve United States appropriated funds, we find we have jurisdiction to consider appeals arising therefrom because the contracts were entered into by an executive agency of the United States with authority to do so and the work performed was for the direct benefit of the United States.

Dated: October 8, 2019

CHRISTOPHER M. MCNULTY
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61144, 61219, Appeals of Sungwoo E&C Co., Ltd., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

17